EL PUEBLO DE PUERTO RICO, apelado, *v.* VICTOR JOSÉ ROBLES GONZÁLEZ, acusado y apelante.

*Número:* MO-90-5     *Resuelto:* 19 de marzo de 1990

*Nelson Pérez Domínguez, Rafael Rodríguez Rivera* e *Ivette Aponte Nogueras,* de la *Sociedad para Asistencia Legal,* abogados del apelante; *Norma Cotti Cruz, Subprocuradora General, Carlos Lugo Fiol* y *Miriam Álvarez Archilla, Procuradores Generales Auxiliares,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Al amparo del trámite de mostración de causa, pasamos juicio sobre la juridicidad de una resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Caguas, mediante la cual dicho foro denegó una solicitud de disolución del Jurado (*mistrial*) y celebración de nuevo juicio del aquí peticionario Víctor José Robles González en el proceso que actualmente se celebra contra éste en dicho tribunal. El origen o fundamento *principal* de la referida solicitud lo constituye un comentario que hiciera uno de los representantes del Ministerio Público, mediante el cual llegó a conocimiento del Jurado el hecho de que entre las partes se había efectuado un procedimiento de alegación preacordada (*plea bargaining*) que había sido rechazado por el peticionario Robles González, actuación prohibida por las disposiciones de la Regla 72(6) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y de la Regla 22(D) de Evidencia, 32 L.P.R.A. Ap. IV.

Como fundamento adicional de la procedencia jurídica de la solicitud de disolución del Jurado, se aduce ante este Tribunal la conducta de hostilidad que alegadamente ha desplegado el juez que preside los procedimientos a nivel de instancia contra el peticionario y su representación legal, conducta que alegadamente ha afectado la "atmósfera total" dentro de la cual se lleva a cabo el proceso judicial. En específico, se alega que dicho magistrado ha cuestionado la competencia profesional de los abogados, lo cual ha lesionado y minado gravemente la relación "abogado-cliente" existente entre ellos.

En resumen, reclama el peticionario Robles González que procede se decrete la disolución del Jurado en el caso de autos y la celebración de un nuevo juicio por cuanto, dadas las circunstancias antes mencionadas, resulta imposible que él obtenga un juicio justo e imparcial. Estamos de acuerdo; veamos por qué.

## I

El Ministerio Público radicó ante el Tribunal Superior de Puerto Rico, Sala de Caguas, pliegos acusatorios contra Rolando Suazo Cátala, José Aguayo, y el aquí peticionario Víctor José Robles González por los delitos de asesinato en primer grado, robo, infracción a los Arts. 6, 7 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416, 417 y 418, e infracción al Art. 168 del vigente Código Penal, 33 L.P.R.A. sec. 4274. En los mismos se les imputó a éstos haber causado —actuando en concierto y de común acuerdo— la muerte a un ser humano mediante el uso de arma de fuego, alegadamente durante la perpetración de un delito de robo. Como resultado de un procedimiento de "alegación preacordada" (*plea bargaining*) y en relación con el delito de asesinato en primer grado, el Ministerio Fiscal accedió a que los coacusados Suazo y Aguayo hicieran alegación de culpabilidad por el delito menor incluido de asesinato en segundo grado.[1]

En el caso del coacusado Robles González, las conversaciones sostenidas por las partes bajo el procedimiento de "alegación preacordada" no tuvieron éxito. Éste, aparentemente, insistió en ser considerado para recibir los beneficios de una sentencia suspendida, privilegio para el cual técnicamente cualificaba, por razón de ser menor de veintiún años,

---

[1] A "cambio" de la rebaja en la calificación del delito, los coacusados Suazo y Aguayo "renunciaron" a ser considerados para recibir los beneficios de una sentencia suspendida, privilegio al que técnicamente eran acreedores al ser éstos menores de veintiún años de edad.

bajo el delito menor incluido de asesinato en segundo grado; condición que el Ministerio Público rechazó.[2] En consecuencia, Robles González fue sometido a juicio por las acusaciones originalmente radicadas, reclamando éste su derecho constitutional a juicio por jurado.

Comenzado el desfile de la prueba de cargo, se suscitaron unos incidentes ante el tribunal de instancia, los cuales desembocaron en la radicación por el coacusado Robles González de una moción solicitando la inhibición o descalificación del juez superior que presidía el proceso, Hon. Enrique Jordán Musa. En síntesis, se le imputó al Juez Jordán Musa en la moción de inhibición desplegar una actitud hostil al limitar el contrainterrogatorio de la defensa; cuestionar la estrategia adoptada por los abogados de defensa, adelantando criterios sobre admisibilidad de edvidencia, de esta forma intentando disuadir a los abogados respecto a la presentación de prueba; haber adoptado la postura de testigo y perito del Ministerio Público; emitir comentarios en presencia del Jurado en torno a la prueba y su alcance, y hacer comentarios denigrantes respecto a la competencia profesional de los abogados defensores. En relación con este último señalamiento, entendemos procedente enfatizar el hecho de que el juez de instancia, en ausencia del Jurado, calificó como "una barbaridad" la forma y manera en que uno de los abogados de defensa contrainterrogaba a uno de los testigos de cargo y amenazó con nombrar otro abogado "para que los asista en la defensa de este caso". Moción sobre inhibición, pág. 6. *La solicitud de inhibición fue denegada por otro magistrado de la Sala de Caguas al cual le fue referida la misma.*

Reiniciado el proceso judicial en la sala que preside el Juez Jordán Musa, se suscitó un nuevo incidente en el

---

[2] Dicha información surge del recurso radicado por el peticionario Robles González. En su comparecencia, en cumplimiento de la orden de mostrar causa emitida, el Procurador General de Puerto Rico *no* rebate *ni* refuta la referida información.

mismo. Durante el contrainterrogatorio de uno de los testigos de cargo por parte de la defensa, el Fiscal manifestó, en presencia de los señores del Jurado y ratificando la información a esos efectos brindada por el testigo a preguntas de la defensa, que los coacusados Suazo y Aguayo se encontraban en prisión por razón de que se habían declarado culpables del delito de asesinato en segundo grado, como consecuencia de una alegación preacordada en que habían renunciado a la probatoria.

En adición expresó el Fiscal en presencia del Jurado que ello era la "misma oferta que se le está haciendo . . . al compañero [el abogado de Robles González] y no la quier[e] aceptar".(8) Solicitada la disolución del Jurado por la defensa por razón de este último comentario, el tribunal de instancia —luego de denegar la misma— procedió a impartirle a los señores del Jurado las instrucciones que estimó pertinentes con el aparente propósito de "subsanar" el perjuicio causado por el comentario del Ministerio Fiscal.

Inconforme, acudió ante este Tribunal Víctor José Robles González en revisión de la decisión del foro de instancia, negándose a decretar la disolución del Jurado, mediante la radicación de un escrito que intituló "Moción al amparo de la Regla 31(A) y en auxilio de jurisdicción". Considerado el mismo como un resurso de *certiorari*, le concedimos término al Procurador General de Puerto Rico para que mostrara causa por la cual no debíamos ordenar la disolución del Jurado y la celebración de un nuevo juicio. En adición, y en auxilio de nuestra jurisdicción, paralizamos los procedimientos a nivel de instancia.(4)

_____

(8) Véase Transcripción Parcial de Evidencia, págs. 31, 32 y 33.

(4) Entendemos procedente señalar el hecho de que, en la sesión celebrada ante el tribunal de instancia, en la cual se le informara a las partes de la orden de paralización emitida por este Tribunal, el juez de instancia, nuevamente, cuestionó la capacidad y competencia profesional de uno de los abogados de defensa.

El Procurador General ha comparecido. En apoyo de su posición de que procede la confirmación de la resolución denegatoria emitida por el tribunal de instancia, sostiene en síntesis que el perjuicio, si alguno, sufrido por el peticionario Robles González como consecuencia de lo expresado por el Fiscal sobre lo de la alegación preacordada fue debidamente subsanado por las instrucciones impartidas por el juez a los señores del Jurado. En cuanto a las expresiones del referido magistrado, respecto a la competencia profesional de los abogados de defensa, sostiene el Procurador General que, sin "entrar en la controversia marginal de si el juez denigró o no a los abogados de la defensa frente al acusado, la realidad es que este incidente no puede haber afectado la percepción del jurado de la imparcialidad del juez porque ese jurado sencillamente no presenció el incidente". Escrito para mostrar causa, pág. 4.

Estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## II

Como es de todos conocido, la Sec. 11 del Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, consagra, en lo pertinente al caso de autos, el derecho de *todo* acusado a que se demuestre su culpabilidad más allá de duda razonable *en juicio público, justo e imparcial*. Como expresáramos en *Pueblo v. Pérez Santaliz*, 105 D.P.R. 10, 13 (1976):

Como sabemos, el juicio va dirigido a la búsqueda de la verdad. Nuestro ordenamiento procesal prescribe como garantía

---

Al éste insistir en que se transcribiera todo lo allí acontecido, el referido magistrado expresó, en ausencia del Jurado, lo siguiente:

"Si se transcribe, se va a transcribir todo; usted entiende, todo; ¿o es que usted no entiende español? ¿Cómo diablos fue usted a la Universidad? ¿Usted no entiende?" Moción informativa y réplica del peticionario, pág. 3.

del derecho a un juicio justo e imparcial que la culpabilidad del acusado ha de fundarse en la prueba desfilada y en los argumentos aducidos ante el tribunal. El acusado tiene derecho a confrontarse con la prueba en su contra y a que se le pruebe la acusación mediante prueba admisible conforme las normas de relevancia, confiabilidad y certeza que la experiencia secular ha consagrado en el proceso adversativo *y no por influencias extrañas al proceso.* (Énfasis suplido.)

Aun cuando la parte peticionaria no lo alega expresamente, la solicitud de disolución del Jurado y celebración de nuevo juicio que hiciera ante el tribunal de instancia se basa en las disposiciones de la Regla 144(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, *la cual en cierta forma viabiliza y garantiza el derecho constitucional antes mencionado.* Establece la misma:

El tribunal podrá ordenar la disolución del jurado antes del veredicto en los siguientes casos:

. . . . . . . . .

(d) Si se hubiere *cometido algún error* o se hubiere *incurrido en alguna irregularidad* durante el proceso que, a juicio del tribunal, *le impidiere al jurado rendir un veredicto justo e imparcial.* (Énfasis suplido.) 34 L.P.R.A. Ap. II, R. 144(d).

Procede, en consecuencia, que nos preguntemos, *en primer lugar,* ¿si se ha cometido algún error o incurrido en alguna irregularidad durante los procedimientos judiciales que hasta la fecha se han llevado a cabo a nivel de instancia en el caso de epígrafe? No debe haber la menor duda sobre el hecho de que la contestación a la anterior interrogante tiene que ser en la afirmativa.

De las manifestaciones hechas por uno de los representantes del Ministerio Público *en presencia de los señores del Jurado,* éstos pueden claramente *percibir e inferir* que entre el Ministerio Público y el imputado de delito y su representación legal se celebraron conversaciones encaminadas a

que el aquí peticionario hiciera alegación de culpabilidad por el delito menor de asesinato en segundo grado y, *peor aún*, que dichas conversaciones no tuvieron éxito *meramente* porque el peticionario aspiraba a ser considerado para una probatoria y no debido a que éste entendiera que él era inocente. *Dichas manifestaciones ciertamente constituyen, y cualifican como, "un error o irregularidad" al amparo de las disposiciones de la antes citada Regla 144(d) de Procedimiento Criminal por cuanto esa evidencia por mandato espreso y terminante de las disposiciones de la Regla 72(6) de Procedimiento Criminal, supra, y de la Regla 22(D) de Evidencia, supra, es claramente inadmisible.* Dichas disposiciones, como es sabido, establecen:

> (6) La existencia de una alegación preacordada, sus términos o condiciones, y los detalles y conversaciones conducentes a la misma no serán admisibles contra el imputado en ningún procedimiento criminal, civil o administrativo si la alegación preacordada hubiere sido rechazada por el tribunal o invalidada en algún recurso posterior o retirada válidamente por el imputado. Lo anterior será admisible por excepción en un procedimiento criminal por perjurio contra el imputado basado en manifestaciones hechas por él bajo juramento. Regla 72(6) de Procedimiento Criminal, *supra*.

> (D) *Declaración de culpabilidad.* Evidencia de una alegación de culpabilidad posteriormente retirada o de una oferta de declararse culpable del delito imputado o de cualquier otro delito, hecha por un acusado en una acción criminal, es inadmisible en cualquier acción contra la persona que hizo la alegación u oferta, sea dicha acción una civil o criminal o de cualquier otra índole. Regla 22(D) de Evidencia, *supra*.

■ Realmente no se requiere que una persona sea muy perspicaz para que pueda darse cuenta de la "razón de ser" de las citadas disposiciones reglamentarias. Si algo demuestra la práctica de la profesión en el campo penal es que, de ordinario, *la prueba más incriminatoria, perjudicial y devastadora con que puede contar el Ministerio Fiscal contra*

*un imputado de delito lo es la de que éste admitió la comisión del delito que se le imputa o que estuvo en algún momento en disposición de declararse culpable del mismo.* Ello así por razón de que, no importa cuán sólida y convincente pueda parecer, o ser, la pruebe que presenta el Estado durante el juicio, el "juzgador de los hechos" —ya sea el juez o el Jurado— nunca está totalmente convencido de la culpabilidad del acusado; ese juzgador *responsable* siempre siente una intranquilidad respecto a ello. Ahí precisamente radica lo incriminatorio y perjudicial que resulta ser la prueba de una alegada admisión o confesión por parte del acusado en la consciencia del juzgador. Apercibido ese juzgador de que el acusado admitió los hechos, *o de que estuvo en disposición de declararse culpable,* la duda o intranquilidad que le aquejaba desaparece como por arte de magia. Esto es, la preocupación que tenía de que mediante su decreto de culpabilidad podía enviar a un inocente a la cárcel, deja de existir.

Advertidos de que en el proceso que actualmente está pendiente ante el tribunal de instancia *efectivamente* se cometió un error o irregularidad, procede que, *en segundo lugar,* nos preguntemos ¿si ese error o irregularidad —*conforme las disposiciones de la antes citada Regla 144(d) de Procedimiento Criminal*— impide que el Jurado que participa en el mismo como juzgador de los hechos *rinda un veredicto justo o imparcial*?

■ La referida interrogante necesariamente requiere, a su vez, que nos cuestionemos si las instrucciones que en el presente caso les impartió el juez a los señores del Jurado, luego de occurido el comentario del Fiscal, subsanaron la irregularidad en cuestión. De entrada, debemos reconocer que, *como norma general y en circunstancias ordinarias,* una instrucción *oportuna y específica* al Jurado por parte del magistrado que preside los procedimientos *puede* subsanar el efecto perjudicial que sobre el Jurado pudiera tener la ad-

misión errónea de evidencia o los comentarios impropios provenientes de un testigo de cargo o del representante del Ministerio Fiscal. *Pueblo v. Suárez Fernández*, 116 D.P.R. 842, 850-851 (1986); *Pueblo v. López Camacho*, 98 D.P.R. 700, 703 (1970); *Pueblo v. Cotto Torres*, 88 D.P.R. 23 (1963).

Ahora bien, *ello no siempre es así*. La decisión de si el error ha quedado subsanado o no por las oportunas instrucciones impartidas por el magistrado realmente depende de "la totalidad de las circunstancias" presentes en el caso. *Pueblo v. Ramos Álvarez*, 118 D.P.R. 782, 792 (1987). Más aún y como expresáramos en *Piñero Agosto v. Tribunal Superior*, 94 D.P.R. 204, 215 (1967), no obstante existir en relación con esta interrogante "principios o guías generalmente aceptados como normas doctrinales, . . . *en última instancia cada situación ha de resolverse con sentido realista a la luz de sus particulares circunstancias y hechos*". (Énfasis suplido.)

Debemos reconocer, en adición, el hecho de que *de ordinario* el que en mejor posición está para resolver esta cuestión lo es el juez de instancia, por cuanto éste no sólo ha sido testigo presencial del incidente objetado, sino que ha podido percibir a través de sus sentidos la reacción, *si alguna*, del Jurado ante dicho "incidente". *Piñero Agosto v. Tribunal Superior*, ante; *Pueblo v. Arteaga Torres*, 93 D.P.R. 148 (1966). Es debido a ello que la decisión del juez de instancia sobre si procede o no concederse la solicitud de disolución del Jurado es una que, de ordinario, merece deferencia por los integrantes de este Tribunal. *Piñero Agosto v. Tribunal Superior*, ante.

Ello *no* significa, sin embargo, que la decisión emitida al respecto por un juez de instancia goce de inmunidad ante la función revisora de este Tribunal. *La razón es sencilla.* Con la posible excepción de los propios miembros del Jurado, *nadie en definitiva puede decir con certeza cuál fue el efecto o influencia que el incidente, o la prueba objetada, tuvo sobre*

*el Jurado.* A esos efectos conviene recordar lo expresado por el compañero Juez Negrón García en la decisión que este Tribunal emitiera en *Pueblo v. Guzmán Camacho*, 116 D.P.R. 34, 38 (1984):

> ¿Puede negarse aun en el campo de lo especulativo, que este trágico acontecimiento no impactó potencialmente a los jurados? "El jurado no está habituado a la prudencia del juez, que espera conocer la totalidad de las pruebas, para luego inferir de ellos su convicción. Por el contrario, lo impresionan las pequeñeces y se torna daltónico en cuanto a pruebas más graves. A veces una fruslería procesal, a la cual no le daría importancia alguna el técnico, llega a ser como el punto céntrico de orientación mental, suficiente para convencer en uno u otro sentido." E. Altavilla, *Sicología Judicial*, Ed. Depalma, Buenos Aires, 1970, Vol. II, págs. 1198–1199.

## III

Aun cuando, naturalmente, respetamos la opinión de quienes sostienen la posición contraria, somos del criterio que un examen de "las particulares circunstancias y hechos" presentes en el caso de epígrafe —*Piñero Agosto v. Tribunal Superior*, ante— causa que se incline la balanza hacia la posición *de que todo lo acontecido hasta la fecha* a nivel de instancia impide que el peticionario obtenga un juicio justo e imparcial, *requisito del debido procedimiento de ley*. Véanse: *In re Murchison*, 349 U.S. 133 (1955); *Pueblo v. Toro Goyco*, 84 D.P.R. 492, 496–497 (1962); *Pueblo v. Martín Aymat*, 105 D.P.R. 528, 537 (1977).

En primer lugar, la "situación" causada por el comentario impropio del representante del Ministerio Fiscal es de la mayor gravedad y no una "mera fruslería". Como expresáramos anteriormente, realmente resulta difícil imaginar otra prueba que sea más perjudicial y devastadora para un acusado en un juicio criminal que la de que él estuvo en disposición de declararse culpable.

■ Por otro lado, todo el que haya practicado la profesión a nivel de instancia es consciente del hecho de que la norma jurisprudencial antes enunciada, a los efectos de que una instrucción del tribunal al Jurado tiene el efecto de "subsanar" el perjuicio causado por el comentario o conducta del Ministerio Fiscal violativa del derecho de un acusado a un juicio justo e imparcial, desafortunadamente ha tenido la consecuencia de que estos incidentes o situaciones se hayan proliferado a nivel de instancia; ello debido quizás a la existencia y aplicación flexible, por parte de este Tribunal, de la referida norma la cual, de ordinario, tiene el efecto de evitar que se decrete un *mistrial* o se revoque una convicción. Es por ello que realmente nunca puede enfatizarse lo suficiente el hecho de que la reacción de los *tribunales de instancia,* ante una situación de esta naturaleza, tiene que ser *verdaderamente* enérgica, severa e inmediata. A esos efectos, resultan ejemplarizantes e ilustrativas —aun cuando hayan sido expresadas hace algún tiempo— las expresiones que este Tribunal hiciera en *Pueblo v. Díaz,* 69 D.P.R. 621, 629 (1949). En dicho caso —refiriéndonos a una situación en que el Fiscal había "comentado el silencio del acusado"— expresamos:

> El derecho de un acusado a no declarar y a que tal circunstancia no establezca presunción alguna en su contra no debe ser invadido por el ministerio público con comentarios adversos ni insinuaciones de clase alguna. Si lo fuera, debe recibir del juez que presida el juicio *la más severa e inmediata recriminación por conducta impropia*; y el jurado ser instruído por la corte inmediatamente en forma apropiada, *de suerte que en el ánimo de los juzgadores de hecho no pueda quedar vestigio alguno de tales comentarios vertidos ante ellos.* (Énfasis suplido.)

Un examen de las instrucciones que con el obvio propósito de subsanar ese perjuicio le transmitiera el juez de instancia a los señores del Jurado demuestra que las mismas, aun cuando constituyeron un esfuerzo loable por parte de

dicho magistrado por corregir el error cometido, fueron unas endebles y genéricas, esto es, no fueron lo *específicas, completas, enérgicas y severas que la situación —y el perjuicio causado— ameritaba.* Véanse: *Pueblo v. Díaz,* ante; *Pueblo v. Machado,* 31 D.P.R. 42, 44–45 (1922).

Al enfrentarse hace más de cinco décadas a una situación similar a la que plantea el caso de autos —esto es, comentario impropio del Fiscal ante el Jurado sobre actuación del acusado que implicaba admisión de culpabilidad por parte de este último— este Tribunal, en *Pueblo v. Marchand Paz,* 53 D.P.R. 671, 683–684 (1938), expresó:

> *La conducta del fiscal con toda probabilidad ya había dejado una marca indeleble en el ánimo de los jueces de hecho.* La manifestación del fiscal, de ser creída por el jurado, tendió a demostrar una admisión de culpabilidad por el acusado e indirectamente acusó a la defensa del serio crimen de tratar de sobornar a un testigo. *No podemos determinar todo el efecto de semejante manifestación, pero a nuestro juicio, resultó inevitablemente perjudicial.*
>
> Existe tal abundancia de jurisprudencia sobre lo que constituye suficientemente un comentario impropio y exige la devolución de un caso para nuevo juicio, que no se puede establecer una regla definida. *Cada caso ha de fundarse en sus hechos específicos. . . . Los hechos del caso que está ante nos hablan por sí solos.* No hay duda alguna de que el jurado recibió de labios del fiscal algo que equivalía a evidencia inadmisible *y estamos convencidos de que la naturaleza perjudicial de esa prueba no pudo ser subsanada por nada que el juez pudiera haber dicho. El daño fué irreparable.* (Énfasis suplido.)

Igual conclusión y resultado se impone en el presente caso. Dado el carácter y contenido de la información proporcionada impropiamente al Jurado por el Fiscal, el efecto grave y perjudicial que de ordinario esa información tiene sobre el Jurado, y la ausencia de una eficaz y oportuna instrucción al Jurado por parte del juez de instancia, el perjui-

cio sufrido por el peticionario resulta ser irreparable e insubsanable.

Ello así por cuanto si una "mera fruslería" puede resultar para el Jurado "como el punto céntrico de orientación mental, suficiente para convencer en uno u otro sentido", *Pueblo v. Guzmán Camacho*, ante, pág. 38, somos del criterio que información como la aquí en controversia obviamente tiene que tener un efecto mayor, determinante y devastador en el ánimo de los señores del Jurado.

Es por ello que, ante las circunstancias particulares del caso, realmente resulta inmaterial saber cuán fuerte o no es la prueba de cargo en el presente caso. Aun en ausencia de ese dato, somos de la opinión que el error cometido es uno perjudicial que hace necesario, en protección del derecho constitucional de todo acusado en nuestra jurisdicción a tener un juicio justo e imparcial, que prudencialmente decretemos —*en esta etapa*—(5) la disolución del Jurado y la celebración de un nuevo juicio. *Pueblo v. Marchand Paz*, ante.

## IV

■ Como expresara este Tribunal en *Reyes v. Tribunal Superior*, 84 D.P.R. 29, 37 (1961):

*No por haberse expresado en innumerables ocasiones debe dejarse de repetir . . .* uno de *los derechos más preciados* que

---

(5) No puede perderse de vista que se trata de una acusación donde se imputa el delito de asesinato en primer grado en la modalidad de *felony murder*. Véase 33 L.P.R.A. sec. 4002. Ello significa que en el presente caso únicamente hay dos posibles veredictos: absolutorio o culpable de asesinato en primer grado. Un veredicto de culpabilidad por el delito de asesinato en primer grado, a su vez, implica que el aquí peticionario *no* tendrá derecho *ni* a una sentencia suspendida *ni* a fianza en apelación. Véanse: 34 L.P.R.A. sec. 1042 y Regla 198 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. El trámite de perfeccionamiento de un recurso de apelación, como es sabido, toma un período de tiempo relativamente largo. Ello significa que el aquí peticionario, de salir culpable, tendrá que pasar un prolongado período de tiempo en prisión, antes de que el planteamiento hoy ante nuestra consideración sea resuelto por este Tribunal, dentro del recurso de apelación que éste radique.

tiene el ciudadano en nuestra comunidad es que cuando se le acusa de delito se le juzgue en tales circunstancias *que el proceso que se le celebre esté rodeado de todas las garantías que hacen posible un juicio justo*. (Énfasis suplido.)

■ Los procedimientos judiciales, no hay duda, son dirigidos y dependen de los seres humanos. No podemos exigir, en consecuencia, que los procesos criminales que se celebran en nuestra jurisdicción sean perfectos. Es *deber de todos*, sin embargo, aspirar y velar por que dichos procesos sean justos e imparciales. De hecho, ello constituye un mandato constitucional.

■ En cumplimiento de ese mandato, estaremos muy atentos a situaciones como las que plantea el presente caso. Resolveremos cada caso que sea traído ante nuestra consideración "con *sentido realista* a la luz de sus *particulares* circunstancias y hechos" —*Piñero Agosto v. Tribunal Superior*, ante, pág. 215— y no conforme a criterios extraños al ideal de la justicia, tales como el de índole económico. *El día en que los derechos constitucionales de nuestros conciudadanos estén a expensas de consideraciones de naturaleza económica será el día en que la justicia habrá dejado de constituir la razón de ser de nuestro ordenamiento.*(6)

----

(6) La cita que se hace en la opinión disidente de la decisión que este Tribunal emitiera en *Pueblo v. Bonilla Ortiz*, 123 D.P.R. 434 (1989), *es una hecha fuera de contexto*. En *Pueblo v. Bonilla Ortiz*, ante —caso en que *el juez* que presidió los procedimientos *erróneamente* se negó a transmitir a los señores del Jurado instrucciones sobre un posible veredicto por un delito menor incluido, razón por la cual nos vimos obligados a revocar y devolver el caso al tribunal de instancia para un nuevo juicio— expresamos que:

"El magistrado que reh[ú]sa impartir al jurado las instrucciones *que la prueba presentada justifica brindar,* no sólo usurpa la función de dicho juzgador de hechos, *sino que causa una innecesaria erogación de fondos públicos y dilación en la solución de los casos,* ya que su actuación de ordinario acarrea la anulación de los procedimientos habidos y la consiguiente celebración de un nuevo juicio." (Énfasis en el original.)

■ *Se dictará sentencia de conformidad.*(7)

El Juez Asociado Señor Negrón García disintió con opinión escrita, a la cual se unieron los Jueces Asociados Señores Ortiz y Alonso Alonso.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se unen los Jueces Asociados Señores Ortiz y Alonso Alonso.

I

"El Juez no es simple árbitro de un torneo medieval entre la defensa y el Ministerio Público, o el retraído moderador de un debate. *El juez es partícipe y actor principal en el*

---

(7) La conclusión y el resultado a que llegamos hace innecesario que nos expresemos sobre, y resolvamos, el planteamiento del peticionario a los efectos de que la conducta y actitud asumida por el Honorable Juez Jordán Musa hacia los abogados defensores igualmente impide que él obtenga un juicio justo e imparcial.

Ciertamente la situación que se percibe de una lectura de la transcripción parcial de evidencia resulta un tanto preocupante. Los comentarios que sobre la capacidad profesional de los abogados defensores ha hecho el Juez Jordán Musa resultan ser innecesarios e improcedentes en un juicio criminal.

Como es sabido, la autoridad que representa la figura del juez ante el Jurado necesariamente implica que cualquier inclinación de éste hacia una de las partes que el Jurado pueda percibir puede tener un enorme peso en su ánimo y decisión. Véanse: L. Conner, *The Trial Judge, His Facial Expressions, Gestures, and General Deameanor—Their Effect on The Administration of Justice*, 6 (Núm. 4) AM. Crim. L.Q. 175 (1968); Anotación, *Gestures or Facial Expressions of Trial Judge in Criminal Case, Indicating Approval or Disapproval, Belief or Disbelief as Ground for Relief*, 49 A.L.R.3d 1186.

Comentarios de la naturaleza de los expresados y la conducta observada por el juez de instancia en el presente caso pueden desvirtuar el " 'balance preciso, claro y verdadero entre el [acusado] y el [Estado]'", el cual balance se requiere en la celebración de un juicio justo e imparcial. *Pueblo v. Toro Goyco*, 84 D.P.R. 492, 497 (1962).

Sobre este particular, estimamos procedente recalcar que en reiteradas ocasiones hemos exigido que el juez ante quien se ventile un procedimiento judicial, debe evitar hasta la más leve sospecha de parcialidad. *Rivera v. Corte*, 71 D.P.R. 953 (1950); *Pueblo v. Miranda Marchand*, 117 D.P.R. 303 (1986).

*esclarecimiento de la verdad y en la administración de lo que es justo.* El juez puede y debe ser en casos vistos con o sin jurado, aunque con mayor libertad en los segundos, participante activo en la búsqueda de la justicia, siempre que no vulnere la imparcialidad que su alto oficio reclama. Puede el juzgador en consecuencia requerir la declaración de determinados testigos o interrogar a los que las partes ofrezcan, siempre que su conducta se mantenga dentro de las normas de sobriedad y equilibrio que impiden que el juez sustituya, en vez de que complemente, la labor del fiscal o del defensor. *Nada impide que un juez, para aclarar un testimonio o una situación, o consciente de que no se han formulado algunas preguntas centrales para la determinación de lo sucedido verdaderamente en un caso, se tome la iniciativa a dicho efecto."* (Énfasis suplido.) *Pueblo v. Pabón,* 102 D.P.R. 436, 440 (1978).

No podemos coincidir con la opinión mayoritaria que hoy decreta la disolución (*mistrial*) del Jurado. Disentimos de la premisa implícita de "atmósfera total" fundamentada en una supuesta "conducta de hostilidad" hacia el acusado Robles González y sus abogados por parte del juez que preside el caso, Hon. Enrique Jordán Musa. También de las inferencias perjudiciales que se le atribuye a un comentario aislado del Ministerio Fiscal. Por último, discrepamos de la conclusión de que el mismo no fue subsanado con las instrucciones oportunas brindadas por dicho magistrado.

El curso decisorio mayoritario es prematuro. Se aparta drásticamente de toda la doctrina prevaleciente al respecto. *Primero,* descarta la norma de que la concesión de un *mistrial* es improcedente, a menos que se demuestre que realmente un acusado ha sufrido un daño positivo, se han perjudicado sus derechos sustanciales o que evidentemente no ha tenido —ni puede tener— un juicio justo e imparcial. *Pueblo v. Díaz,* 74 D.P.R. 375, 391 (1953). *Segundo,* se ignora que por su naturaleza este tipo de determinación se nutre de la

discreción del juez que preside el juicio, quien está en mejor posición que este Tribunal apelativo para evaluar el trasfondo integral del caso y determinar inteligentemente el efecto que cualquier irregularidad haya tenido sobre el Jurado. *Pueblo v. Castro Santiago*, 123 D.P.R. 894 (1989); *Pueblo v. Guzmán Camacho*, 116 D.P.R. 34, 38 (1984); *Piñero Agosto v. Tribunal Superior*, 94 D.P.R. 204, 215 (1967); *Pueblo v. Arteaga Torres*, 93 D.P.R. 148 (1966).

Y, finalmente, se desecha la máxima de que no todo incidente o irregularidad frente al Jurado macula el proceso. Nunca nuestra casuística le ha atribuido a los jurados una sensibilidad extrema. Para que proceda su disolución, el incidente tiene que ser *grave, perjudicial, sustancial e insubsanable*. *Pueblo v. Guzmán Camacho*, supra, págs. 37–38; *Pueblo v. Dones Arroyo*, 106 D.P.R. 303, 311 (1977); *Pueblo v. Andrades González*, 83 D.P.R. 849, 859–860 (1961). Esa no es la situación del caso de autos.

## II

De los cuatro (4) incidentes señalados por el peticionario Víctor José Robles González, el primero, relativo a la competencia profesional de los abogados de defensa, *no ocurrió frente al Jurado*. Es obvio, pues, que no puede servir de fundamento para la decisión de este Tribunal. Examinemos los restantes tres (3).

El *segundo* se refiere a que el juez de instancia alegadamente puso ciertas palabras en boca de un testigo. No es así. La transcripción revela que el incidente surgió en momentos en que el testimonio del testigo Ginés Luna era confuso. No estaba claro si el testigo se refería a la descripción de tres (3) personas trigueñas o de tres (3) personas, uno (1) trigueño y uno (1) blanco, y finalmente lo que el testigo consignó en su informe. El juez simplemente despejó la duda y se limitó a preguntarle si "[s]e referían [a] que uno era blanco y otro era trigueño". Moción sobre inhibición, pág. 2. Ciertamente si

dicho testigo hubiese entendido que esa expresión judicial no era correcta, pudo y debió corregirla. Honestamente no vemos cómo esa sola pregunta y aquellas relacionadas pudieron prejuiciar al Jurado contra el acusado, aquí apelante, Robles González.

En cuanto al *tercero*, el acusado caracteriza las manifestaciones del juez como las de un testimonio pericial. Tampoco tiene razón. La intervención del magistrado surgió en un contexto limitado, en ocasión de evaluar la admisibilidad en evidencia de una fotografía tomada con bombilla (*flash*). Éste simplemente indicó lo que todo el mundo conoce —materia susceptible de conocimiento judicial— esto es, que el propósito del *flash* era permitir que la imagen se reprodujera en la película (celuloide), y no representar la realidad de la iluminación de un sitio. Advertimos que ello no ocurrió en el vacío, sino mientras declaraba como testigo el fotógrafo de la Policía, Ángel Rivera. Acto seguido, éste confirmó verbalmente la apreciación del juez. Ciertamente, la intervención del juez —necesaria para evaluar si la foto presentada por el Ministerio Público era o no admisible— estuvo dentro del ámbito y control autorizado en la Regla 43(C) de Evidencia, 32 L.P.R.A. Ap. IV. *No es indicador ni representa visos de parcialidad contra el acusado. Pueblo v. Pabón*, supra.

Conforme nuestra doctrina, los incidentes antes reseñados no son de tal naturaleza que hubiesen afectado significativamente la percepción del Jurado. *Nuestra jurisprudencia es lo suficientemente fértil para así decidir*. A modo de ilustración, en *Pueblo v. Figueroa González*, 95 D.P.R. 98, 108 (1967), arribamos a igual resultado en un incidente ante el Jurado en que el juez de instancia *dio un "malletazo" y amonestó* al padre del acusado por desacatar las órdenes del tribunal mientras declaraba. De igual modo, en *Pueblo v. Rivera Carmona*, 108 D.P.R. 866, 870 (1979), sostuvimos un veredicto condenatorio ante un incidente en que el *juez apercibió al abogado de la defensa de desacato frente al Jurado.*

En *Pueblo v. Dones Arroyo*, supra, pág. 311, rechazamos el señalamiento de que el juez *hizo gestos que denotaban incredulidad al recibirse el testimonio de uno de los testigos de defensa*. En *Pueblo v. González Colón*, 110 D.P.R. 812, 821 (1981), confirmamos, aun cuando el juez calificó una explicación de un testigo de cargo como *"fabulosa" y "satisfactoria"*. Y en *Pueblo v. Matos*, 81 D.P.R. 508, 517 (1959), concluimos que las manifestaciones y comentarios del juez sobre la reputación de los testigos del acusado y de sus abogados defensores, al igual que su interrogatorio, no influyeron en el veredicto acusatorio del Jurado.

Esa casuística responde a un enfoque judicial pragmático de que si bien "[u]n juez no debe hacer comentarios de clase alguna, en presencia del jurado, que tiendan a demostrar su opinión sobre los hechos, . . . *la determinación de si un comentario del juez*, en el transcurso del juicio, *es perjudicial al acusado gira alrededor de dicho comentario, de la influencia que el mismo pueda ejerçer en el jurado y de sus efectos en relación con las oportunidades de defensa del acusado, debiendo ser revocada la sentencia cuando los comentarios del juez son de tal naturaleza que tiendan razonablemente a influir en la mente del jurado contra dicho acusado, privándole de su derecho a un juicio justo e imparcial"*. (Énfasis suplido.) *Pueblo v. Díaz*, supra, pág. 394.

## III

Réstanos considerar el incidente principal que se origina después que se presenta prueba de que Rolando Suazo Cátala y José Aguayo —coacusados con Robles González de asesinato en primer grado, robo, violación a los Arts. 6, 7 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416, 417 y 418, e infracciones al Art. 168 del Código Penal, 33 L.P.R.A. sec. 4274— *por los mismos hechos*, habían hecho alegación de culpabilidad por asesinato en segundo grado y renunciado a la probatoria. El comentario del Ministerio Fis-

cal fue a los efectos de que Robles González no quiso aceptar igual oferta.

De ese solo comentario —en un vuelo extraordinario de imaginación judicial— la mayoría ha deducido que el *Jurado* —compuesto de ordinario "de personas desconocedoras de las normas que nutren nuestro [derecho]", *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 150 (1985)— *conoció* "que entre las partes se había efectuado un procedimiento de alegación preacordada (*plea bargaining*) que había sido rechazado por el peticionario Robles González" (opinión del Tribunal, pág. 752); que "no tuvieron éxito[, pues é]ste, aparentemente, insistió en ser considerado para recibir los beneficios de una sentencia suspendida" (opinión del Tribunal, pág. 753), y *"peor aún*, que dichas conversaciones no tuvieron éxito *meramente* porque el peticionario aspiraba a ser considerado para una probatoria y no debido a que éste entendiera que él era inocente" (opinión del Tribunal, pág. 758). Y finalmente, concluye que el Jurado fue *apercibido* "de que el acusado admitió los hechos, *o de que estuvo en disposición de declararse culpable"* (opinión del Tribunal, pág. 759); aserto que se reproduce después (opinión del Tribunal, pág. 761). *Discrepamos de esas inferencias y enfoque decisorio.*

*La lectura cabal de la transcripción revela dramáticamente que el conocimiento del Jurado sobre la participación de Robles González en el asesinato y robo fue en virtud de evidencia que éste produjo vía unas admisiones del coautor Suazo Cátala que lo involucraban, y que desde sus inicios el Ministerio Fiscal las objetó.*

A tales efectos, su abogado Rafael Rodríguez Rivera, en el *contrainterrogatorio* del agente del C.I.C., Antonio Luna Martínez, testigo de cargo, preguntó y cubrió los extremos siguientes: que arrestaron a Suazo Cátala, a Aguayo y al peticionario Robles González cuando éstos se detuvieron frente al Consolidated Mall y a Burger King después de un accidente (T.E. Parcial, pág. 3); los describió e identificó (íd.,

págs. 4–5); que en el cuartel los mantuvieron juntos (íd., págs. 5–6); que él no levantó huellas dactilares en las armas ocupadas, como tampoco hizo prueba de parafina (íd., págs. 7–8); que tanto en el trayecto hacia el cuartel como allí le hicieron las advertencias legales (íd., págs. 9–10); que Suazo Cátala no le dijo nada al principio (el Fiscal objetó inicialmente esa pregunta "pues no estamos juzgando aquí a Suazo", pero después retiró su objeción —íd., págs. 10–11—); que luego de hechas las advertencias, cuando avisaron al cuartel que la persona herida había muerto, mientras estaban los tres (3) arrestados juntos, le preguntó a Suazo Cátala por qué lo habían matado y éste dijo "'lo maté porque apuntó a éste que estaba bien cerca de él, por esa razón yo lo maté'" (íd., págs. 11–12). En ese instante, el juez de instancia *sua sponte* ordenó que el Jurado se retirara.

Durante esa ausencia, el Fiscal Crespo Millán expresó:

El argumento más fuerte que todos ellos utilizaron para solicitar la separación de los procesos, *fue la existencia de unas admisiones por parte de uno de los acusados luego de terminada la conspiración. Nosotros no trajimos esas admisiones en nuestro directo en el ánimo de concederle al acusado y a los compañeros de defensa, un juicio justo e imparcial.* Sin embargo, los compañeros, aparentemente, han decidido que dichas admisiones en alguna medida —no vemos cómo, porque establece claramente un concierto y común acuerdo— en alguna medida les beneficia. Entendemos, quizás, por lo, por, por [sic.] los últimos titulares de prensa o por alguna razón que desconozco, pues, aparentemente, han recogido su posición original en cuanto a esas admisiones para traerlas en este proceso. Nuestra preocupación principal en cuanto a esto, no es [en cuanto a] las admisiones, porque . . . *que se sepa la verdad, pues, que se sepa. Que se traiga todo lo que tiene que ver en el proceso.* Sin embargo, nos preocupa que los compañeros traten de aprovecharse de una actitud de la Fiscalía, de *llevar un juicio justo, imparcial, para querer argumentar que el Ministerio Público ocultó o trataba de ocultar que Rolando Suazo admitió haber disparado allí en el momento en*

*que le apuntaron al cliente de los compañeros, durantre el atraco.* O sea, nuestra preocupación principal en estos momentos no es que eso haya pasado al Jurado, ya pasó, nosotros objetamos oportunamente. Entendimos, por razones tácticas, que debíamos retirar la objeción. Nuestra preocupación ahora es, que viendo el tipo y el comportamiento de los abogados durante todo este proceso, nuestra preocupación —vuelvo y repito— es que quieran ahora tratar de aprovechar que ese hecho surgió en el direc... en el contrainterrogatorio de ellos, para utilizarlo como argumento en contra de la Fiscalía en el sentido de que la Fiscalía había ocultado ese hecho, lo cual sería completamente falso y entendemos que sería un golpe bajo.

Nos estamos, quizás, adelantando, pero por el derrotero que ha seguido este caso y la forma de los compañeros de llevar este caso, tenemos, genuinamente la preocupación, de que quieran llevarle un mensaje erróneo al Jurado, cuando ellos saben que eso lo ha tenido siempre el Ministerio Público, *se lo había informado y ellos mismos lo utilizaron como argumento para separar las causas.* Todos los abogados lo utilizaron en diferentes momentos como argumento para separar las causas. Y ahora, sorpresivamente, pues, en su directo, pues, el compañero lo trae como si él fuera el Mesías en esta Sala, que quisiera traer la verdad. Sencillamente, tenemos esa preocupación y entendemos que, en la medida posible, se debe corregir o se debe instruir a los compañeros, de que no pueden utilizar este tipo de argumento en contra del Ministerio Público. (Énfasis suplido.) T.E. Parcial, págs. 14–16.

Subsiguientemente, luego de unas expresiones del juez, del Fiscal Crespo Millán y del licenciado Rodríguez Rivera en torno a que se estaba imputando "un común acuerdo", esto es, una conspiración —aunque no el delito como tal— *regresó el Jurado.* T.E. Parcial, págs. 16–20.

Continuó el *contrainterrogatorio* del licenciado Rodríguez Rivera, etapa en que sus preguntas giraron sobre si se había marcado en el cuartel las armas, las balas y el dinero, y quien tenía el control y había intervenido con esos objetos (T.E. Parcial, págs. 22–24).

En el *redirecto* del Fiscal, el testigo declaró sobre las edades de los otros coacusados y aclaró que las admisiones de Suazo Cátala de que disparó cuando "le apuntó a *éste*", fue con referencia al acusado Robles González (T.E. Parcial, págs. 24–25); que Suazo Cátala le dijo que en el robo participaron José Aguayo y Víctor José Robles González, y los identificó de unas fotografías. Identificaciones 19-A y 19-B; T.E. Parcial, págs. 26–27.

Nuevamente la defensa recontrainterroga así:

LCDO. RAFAEL RODRÍGUEZ RIVERA:

P. Mire, policía Luna, Su Señoría le preguntó a usted el jueves pasado, que si usted veía esas otras dos personas que se habían arrestado allí, los veía aquí en Sala.

R. ¿Perdone?

P. Usted recuerda que Su Señoría le preguntó a usted, que si usted veía aquí en Sala a esas otras dos personas. ¿Verdad que sí?

R. Eso es correcto.

P. Sí. Y usted le contestó a Su Señoría que *no los veía aquí.*

R. Eso es así.

P. Sí. Y el Señor Fiscal le acaba de presentar dos fotografías a usted, ¿verdad?

R. Eso es correcto.

P. Y usted dice *que esas son dos personas que usted también arrestó allí por estos mismos hechos.*

R. Eso es así.

P. *Mire, lo cierto es que esas dos personas están cumpliendo ahora mismo . . .*

HON. FISCAL CRESPO MILLÁN:

.= *Hay objeción*

LCDO. RODRÍGUEZ RIVERA:

*. . . por Asesinato en Segundo Grado. Mire a ver.*

HON. FISCAL CRESPO MILLÁN:

.= *Hay objeción a eso.*

LCDO. RAFAEL RODRÍGUEZ RIVERA:

.= Sí, ¿cómo que . . . Si trajo las fotos y abrió las puertas.

HON. JUEZ:

.= Un momentito, un momentito. T.E. Parcial, págs. 27–29.

El juez intervino y pide que haya orden en las preguntas y planteamientos de derecho a los abogados de la defensa y al Fiscal. Íd.

Así dispuesto, continuó el Lcdo. Rafael Rodríguez Rivera:

P. Mire, la pregunta es . . . cuando . . . que no estaban aquí . . . el Fiscal le mostró dos fotos, ¿verdad que sí?

R. Eso es así.

P. Y usted le dijo a Su Señoría, *que esas personas no estaban aquí.*

R. Eso es así.

P. Y yo le estoy preguntando, *si lo cierto es, que esas dos personas, Orlando Suazo, el que disparó y le aceptó a usted que había matado al señor, y el otro joven, los dos están cumpliendo por Asesinato en Segundo Grado.*

R. Desconozco por cuáles están cumpliendo, *pero sé que están presos.*

P. Mire, y mire a ver si lo cierto es, que usted también estuvo de testigo en este caso.

R. *Eso es correcto, en la Vista Preliminar.*

P. Y el juicio en la Sala 505, ¿no estuvo?

R. Si mal no recuerdo, creo que no.

P. O sea, que nosotros no nos vimos ahí en ese juicio.

R. *En juicio no.*

HON. JUEZ:

.= Bueno, pero un momentito.

LCDO. RAFAEL RODRÍGUEZ RIVERA.

.= Está bien.

HON. JUEZ:

.= Un momentito.

Usted habla de juicio.

LCDO. RAFAEL RODRÍGUEZ RIVERA:

.= Pues, las vistas.

HON. JUEZ:

.= En la Sala 505.

LCDO. RAFAEL RODRÍGUEZ RIVERA:

P. Mire, las vistas. . .

HON. JUEZ:

P. ¿Hubo juicio o no hubo juicio?

. . . . . . . .

**LCDO. RAFAEL RODRÍGUEZ RIVERA:**

.= *Hubo alegación de culpabilidad.*

**HON. FISCAL CRESPO MILLÁN:**

.= *Se declararon culpables, renunciaron a la probatoria de Segundo grado y se declararon culpables para cumplirla.*

**LCDO. RAFAEL RODRÍGUEZ RIVERA:**

.= Culpables del Segundo Grado. Exacto.

**HON. FISCAL CRESPO MILLÁN.**

.= La misma oferta que se le está haciendo . . .

**LCDO. RAFAEL RODRÍGUEZ RIVERA:**

.= Eso fue lo que el Ministerio Público. . .

**HON. FISCAL CRESPO MILLÁN:**

. . . *al compañero y no la quiere aceptar.*

**LCDO. RAFAEL RODRÍGUEZ RIVERA:**

.= *No, eso . . .*

**HON. JUEZ:**

.= *No, no, no. Mire, fiscal. . .*

**LCDO. RAFAEL RODRÍGUEZ RIVERA:**

.= Tenemos reparo, porque no es así.

**LCDO. NELSON PÉREZ DOMÍNGUEZ:**

.= Tenemos reparo y solicitamos que se retire el Jurado.

**LCDO. RAFAEL RODRÍGUEZ RIVERA:**

.= Sí, tenemos reparo a ese comentario.

**HON. JUEZ:**

.= Mire, mire . . .

**LCDO. RAFAEL RODRÍGUEZ RIVERA:**

.= Tenemos reparo a ese comentario, *porque el compañero sabe que eso no es así.*

**HON. JUEZ:**

.= Le voy a decir, Fiscal de Distrito.

**FISCAL DE DISTRITO–ALFREDO UMPIERRE:**

*Mande a retirar al Jurado.*

**HON. JUEZ:**

*Vamos a retirar al Jurado.*

**FISCAL DE DISTRITO–ALFREDO UMPIERRE:**

.= No quiero que los derechos del acusado se vayan a afectar. *Si vamos a dilucidar . . .*

**HON. JUEZ:**

.= Que se retire el Jurado.

FISCAL DE DISTRITO–ALFREDO UMPIERRE:
*... la oferta o no oferta, Su Señoría, que se retire el Jurado.*
(EL PANEL DE JURADO ES RETIRADO DE SALA)
(AL IGUAL QUE EL TESTIGO[).] (Énfasis suplido.)
T.E. Parcial, págs. 30–34.

Lo expuesto nos permite concluir —sin que sea susceptible de otra interpretación— que *antes* del comentario del Fiscal al mencionar la oferta: (1) el propio acusado desfiló *ante el jurado prueba incriminatoria a su causa,* que consistió de admisiones de uno de los coacusados originales; (2) a *través de las mismas, el Jurado conoció su participación en el crimen*; (3) el Ministerio Fiscal objetó inicialmente esa línea de preguntas; (4) el Fiscal se abstuvo de producir directamente esas admisiones para no afectar el derecho a juicio justo e imparcial de Robles González; (5) Suazo Cátala disparó a la víctima porque le *había apuntado al peticionario Robles González*; (6) éste fue *arrestado junto a los otros dos* (2) quienes también *habían sido acusados de asesinato en primer grado*; (7) esas personas *no estaban en la vista* por estar presos *cumpliendo una condena por asesinato en segundo grado,* y (8) no hubo juicio en su fondo, pues *ambos se declararon culpables y renunciaron al derecho a una probatoria.*

Puntualizamos que esa prueba se desfiló ante el Jurado por iniciativa de la propia defensa. Obviamente, hasta ese momento, no puede válidamente argumentarse que el Jurado estuviera ajeno o ignorante sobre los extremos siguientes: (1) que el acusado Robles González *participó* junto con Suazo Cátala y Aguayo en el robo en que Suazo Cátala hirió de muerte a una persona; (2) que *todos* fueron acusados de robo y asesinato en primer grado; (3) que Suazo Cátala y Aguayo optaron por declararse culpables de asesinato en segundo grado y renunciaron a la probatoria. *De esa prueba, también es claro que antes del comentario, el Jurado razo-*

nablemente pudo también haber deducido que Robles González no se declaró culpable, sino que optó por defenderse.

No obstante el conocimiento *real* de esos hechos por parte del Jurado —*y las posibles inferencias que al respecto pudieron legítimamente haber hecho momentos antes del comentario del Fiscal Crespo Millán*— para fundar su decisión, la opinión mayoritaria concluye que a través de dicho comentario el Jurado advino en conocimiento e infirió "que [el acusado] estuvo en disposición de declararse culpable". Opinión del Tribunal, pág. 761. Esa inferencia es *altamente especulativa.* Frente a la misma, en términos de probabilidades, *¿no es más razonable inferir que fue la prueba incriminatoria desfilada por el mismo Robles González relativas a las admisiones de Suazo Cátala —antes del comentario— por las cuales el Jurado pudo percibir su disponibilidad de declararse culpable?*

El comentario *aislado* del Fiscal *después* de toda la prueba *incriminatoria* presentada, en el sentido de que le había hecho al compañero (abogado del acusado Robles González) igual oferta y aquél la había rechazado, *aunque indebido, no tiene el alcance conjetural que le atribuyó la mayoría.* Si algo revela la transcripción es que fue breve y limitada, y no mencionó al acusado por su nombre. La referencia fue al abogado del acusado Robles González y, acto seguido, el propio juez intervino y detuvo al Fiscal. Al indicar la defensa que tenía reparos, retiró al Jurado.

También refleja que no estamos ante la situación descrita por la mayoría como de "la mayor gravedad". No es la situación prevista en la Regla 22(D) de Evidencia, 32 L.P.R.A. Ap. IV, esto es, que ante el Jurado se presentara prueba sobre "[e]videncia de una *alegación de culpabilidad posteriormente retirada* o de una *oferta* de declararse culpable del delito imputado o de cualquier otro delito" *hecha por el acusado Robles González.* Tampoco estamos ante prueba sobre "[l]a existencia de una *alegación preacordada, sus términos*

*o condiciones, y los detalles y conversaciones conducentes a la misma"*. Regla 72(6) de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

Lo *único* habido fue el breve comentario de una oferta del Fiscal a su abogado. En virtud de la *prueba desfilada previamente por el propio Robles González*, la percepción de lo que razonablemente apreció el Jurado es que el Ministerio Fiscal le ofreció la oportunidad de que se declara culpable —al igual que los otros dos (2) coacusados— y él se negó. *No hay fundamento, pues, para concluir que del comentario el Jurado infirió que admitió su "culpabilidad".* En la dimensión de lo imaginable, por no decir, especulativo, el Jurado pudo también haber inferido muchas otras cosas, *incluso todo lo contrario, esto es, que no aceptó la oferta del Fiscal pues era y es inocente.*

Una cosa sí es cierta, *mucho antes del aludido comentario* —la prueba desfilada ante el Jurado en virtud de las propias preguntas de la defensa— estableció que "se trata de una muerte acaecida durante la perpetración de un delito de robo. La acusación que por el delito de asesinato en primer grado radicara el Ministerio Público al amparo de las disposiciones del Art. 83 del Código Penal de Puerto Rico de 1974 (33 L.P.R.A. sec. 4002) así lo imputó. Aun aceptando para fines de la argumentación —lo cual es cuestionable— que el acto [del coautor Suazo Cátala] de dispararle al occiso no había sido contemplado por el apelante [Robles González], él es responsable de la muerte ocurrida durante el delito de robo que había acordado perpetrar en unión de los otros dos coautores. Véanse: *Pueblo v. Lucret Quiñones*, 111 D.P.R. 716 (1981); *Pueblo v. González Ruiz*, 90 D.P.R. 580 (1964)". (Escolio omitido.) *Pueblo v. Jiménez Hernández*, 116 D.P.R. 632, 640 (1985).

En estas circunstancias, no podemos coincidir con la inferencia mayoritaria de que el comentario *sólo* fue percibido por el Jurado como "que [el acusado] estuvo en disposición

de declararse culpable". (Énfasis suprimido.) Opinión del Tribunal, pág. 761. Esa conclusión no es suficiente para disolver el Jurado. Es tan especulativa como otras en el inventario de nuestra jurisprudencia. Así, el caso que más se aproxima al de autos —aunque no es idéntico— es *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 152 (1985). Allí determinamos que era una "buena práctica" que los jueces —para evitar que el Jurado *"especule"*— impartieran una instrucción específica expositiva de que *no deberían tomar en cuenta la alegación de culpabilidad de un coacusado hecha después de comenzado el proceso*. Aun cuando en esa instancia no se brindó esa instrucción específica, concluimos que ello *no ameritaba la revocación* por cuanto —al decir del Juez ponente Señor Rebollo López— la misma "no 'hiere derechos fundamentales' del apelante. *Pueblo v. Díaz Ríos*, 107 D.P.R. 140, 143 (1978)". *Pueblo v. Ortiz Martínez*, supra, págs. 152–153 esc. 13.

Y en *Pueblo v. Suárez Fernández*, 116 D.P.R. 842, 850 (1986), nos negamos a disolver el Jurado, aun cuando un testigo de cargo —agente investigador— testificó ante el Jurado que uno de los coacusados " 'le dio la misma versión sobre los hechos'". Aunque reconocimos "que el jurado pudo haber pensado que ambos coautores compartían la misma versión de los hechos", en vista de que el Jurado pudo adjudicar credibilidad y *el tribunal brindó unas instrucciones especiales y oportunas*, concluimos que se logró evitar el alegado efecto perjudicial.

*Repetimos, a fin de cuentas, tan especulativo es inferir que del incidente el Jurado sólo percibió que el acusado Robles González se negó, siendo culpable, a aceptar igual acuerdo, como conjeturar —con igual validez decisoria— todo lo opuesto, a saber, que el Jurado percibió que no aceptó la oferta, porque no era, ni es, culpable.*

En resumen, discrepamos de la opinión mayoritaria que desproporcionalmente le atribuye al incidente descrito unos

efectos nefastos, *máxime ante el carácter tan incriminatorio de la evidencia producida por el propio Robles González poco antes del comentario.*

Y claro está, evidentemente la mayoría del Tribunal, al ordenar un nuevo juicio, está conteste en que en el caso de autos, *dicho comentario no fue de mala fe ni con la intención de obligar a la defensa a solicitar un "mistrial". Pueblo v. Suárez Fernández*, supra, págs. 848-850.

La prematura intervención de este Tribunal —sin haberse desfilado toda la prueba— incluso nos impide examinar si realmente estamos ante un error perjudicial, esto es, "si probablemente el resultado hubiera sido distinto de no haberse admitido o excluído la evidencia, y habiendo mediado oportuna y correcta objeción, el tribunal apelativo probablemente revoque". E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, pág. 8. Véanse: *Pueblo v. Fradera Olmo*, 122 D.P.R. 67 (1988); *Pueblo v. Torres Rodríguez*, 119 D.P.R. 730 (1987); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139 (1985); *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256, 261 (1983); *Pueblo v. Mangual Hernández*, 111 D.P.R. 136, 145 (1981); *Pueblo v. Calviño Cereijo*, 110 D.P.R. 691 (1981); *Pueblo v. Prados García*, 99 D.P.R. 384 (1970).

Como cuestión de realidad, el proceso en instancia todavía no ha culminado. Y no podemos olvidar que es "natural que un jurado forme algunas impresiones según se desarrolla el caso pero ellas pueden ser, y muchas veces son, cambiadas al terminarse la totalidad de la prueba y en vista de las instrucciones de la corte". *Pueblo v. Díaz*, supra, pág. 399.

## IV

Ahora bien, *suponiendo* que la conclusión mayoritaria sobre la impresión del Jurado fuera la *única* susceptible de

hacerse, examinemos si efectivamente ello afectó el potencial de ser juzgado imparcialmente.

Solicitado el *mistrial,* el juez lo denegó y, cuando regresó el Jurado, *inmediatamente* los instruyó así:

Damas y Caballeros del Jurado, *los comentarios que hagan las partes, los comentarios que yo haga, los gestos,* los manerismos, las expresiones del rostro, si se sube o se baja la voz, no hacen prueba en este caso ni en ningún caso. Es a base de la evidencia que ustedes escuchen ahí.

En este caso *se le imputa* al señor acusado, *que actuando junto y de común acuerdo con dos personas más, cometieron los delitos de los cuales se leyeron a ustedes las acusaciones. Pero en este juicio solamente ustedes van a dilucidar si este señor es inocente o es culpable de todos los delitos, de alguno de los delitos o de algún delito. Cada delito se va a pesar independientemente.*

*Las decisiones que hayan tomado, si algunas, los otros coacusados, no pueden tomarlas en consideración en este caso. Cada cual actúa motivado por sus propios intereses.* Lo mismo que actuaría usted o que actuaría el otro caballero, la dama; cada uno de nosotros actuamos de acuerdo a lo que entendemos que mejor nos conviene. Eso es una regla de la vida. Puede ser egoísmo. Pero, cada cual actúa de acuerdo con lo que le conviene. *Lo que ellos hayan hecho, y se haya dicho aquí que ellos hicieron, no puede influir en el ánimo de ustedes para ustedes decidir la inocencia o culpabilidad de este ciudadano. Los comentarios que ellos,* la defensa, haya hecho sobre este particular, no deben tomarlos en cuenta. *Los comentarios que ha hecho el Ministerio Fiscal, no deben tomarlos en cuenta, no deben pesarlo[s].* Este caso solamente ustedes lo van a decidir a base [del] testimonio de lo que ustedes escuchen ahí. De la prueba documental, las fotografías, gorras, revólveres, etc. que aparezcan. *No a base de comentarios, no a base de lo que dice fulano, no a base de lo que dice sutano, no a base de lo que yo ofrezco, no a base de lo que se ofreció, no a base de que si estuvieron esta tarde toda la tarde esperando, no a base de que si tienen que salir afuera porque se está discutiendo un planteamiento de derecho.* Ustedes son juzgadores de hecho sujetos al derecho del caso. Y el derecho

del caso se los explicaré yo al momento de deliberar. ¿Está claro? ¿Alguna instrucción adicional que deseen que yo haga?

LCDO. NELSON PÉREZ DOMÍNGUEZ:

.= Permítame el Tribunal. Sí, Vuestro Honor. Nosotros, eh . . . la solicitud a Su Señoría fue la misma que ya vertimos anteriormente en ausencia del Jurado. Es la petición de la defensa.

HON. JUEZ:

.= No ha lugar. Adelante con el testimonio. Ya se terminó con el testimonio, testimonio del señor, ¿verdad? Puede retirarse caballero, está excusado.

Próximo testigo. (Énfasis suplido.) T.E. Parcial, págs. 56–58.

En lo esencial, esas instrucciones fueron correctas, suficientes y subsanaron el indebido comentario del Ministerio Público. *Pueblo v. Suárez Fernández*, supra, págs. 850–851; *Pueblo v. Calderón Rodríguez*, 97 D.P.R. 261, 264 (1969); *Pueblo v. Hernández Santiago*, 97 D.P.R. 522, 531 (1969); *Pueblo v. López Camacho*, 98 D.P.R. 700, 703 (1970); *Pueblo v. Cotto Torres*, 88 D.P.R. 23, 35 (1963); *Pueblo v. Andrades González*, supra, pág. 854; *Pueblo v. Rivera*, 64 D.P.R. 652, 654 (1945).

Leídas integral y cuidadosamente esas instrucciones, ¿puede seriamente sostenerse que no fueron específicas, completas, enérgicas y severas? Sinceramente confesamos que no comprendemos cómo la mayoría del Tribunal ha podido detectar —fundamentada solamente en la misma inexpresiva transcripción que también hemos examinado— la falta de especificidad, relatividad, flexibilidad o debilidad de las mismas.

Más aún, no nos explicamos cómo llega a esa conclusión la mayoría de este Tribunal que no toma en cuenta que, con posterioridad al incidente original en la tarde de 21 de febrero de 1990, el juez de instancia instruyó adicionalmente al Jurado del modo siguiente:

Juez: Está presente el abogado, los tres abogados de la defensa, el Ministerio Público.

Yo quiero enfatizarles a ustedes nuevamente que las manifestaciones, los comentarios, los argumentos vertidos por los abogados de la defensa . . . o por el Ministerio Fiscal durante el presente juicio no hacen ni constituyen prueba, por lo tanto no pueden ser considerados como prueba para la determinación de la culpabilidad o inocencia del acusado igualmen . . . de igual manera no pueden considerar como prueba para el r[é]cord *las manifestaciones, comentarios, argumentos, los razonamientos hechos por el juez que preside este proceso al resolver los planteamientos hechos por los abogados de las partes. Entendieron esto claro.*

Jurado: S[í] señor.

Juez: *El jurado deberá decidir este caso únicamente a base de la evidencia presentada en el Tribunal.* Ustedes deberán descartar totalmente y no considerar cualquier informe de prensa, televisión o radio que puedan haber leído, visto o escuchado. Tales informes no constituyen evidencia, y por lo tanto, ustedes no pueden considerar ni dejarse influenciar en manera alguna por tal publicidad. Ello resulta altamente impropio, por lo que les instruyo a que se abstengan de cualquier decisión ulterior sobre el particular. Es irrazonable considerar tales informes por la misma circunstancia de que no constituyen prueba, toda vez que no ha habido oportunidad de constatar o comprobar su certeza o de alguna manera explicarlos. Páginas 6 y 7 del libro de Instrucciones al Jurado.

Es deber de ustedes, como jurados que están actuando en este caso, no conversar ni comentar entre sí, ni con otras persona[s], acerca de ningún particular relacionado con este proceso, ni tampoco formar o expresar juicio alguno sobre el mismo, hasta que el caso haya sido definitivamente sometido para deliberación. A tales efectos les instruyo que si alguna persona se acercare a ustedes para comunicarse respecto al caso, es vuestra obligación rechazar cualquier intento sobre el particular e inmediatamente informar de ello al Juez. De no conseguir al Juez, al señor alguacil o a cualquiera de los alguaciles para que estos . . . (No se entiende) . . . .

Les pregunto, a ustedes que luego de haberles informado que ustedes deben resolver este caso a base de la prueba pre-

sentada y [a] *base de la prueba documental admitida en evidencia, si hay alguno de ustedes, por ejemplo, el incidente que ocurrió en la noche de ayer, en que yo le llamé la atención a ambas partes y que ustedes recuerdan que le hice unas advertencias sobre el particular, de que no las tomaran en consideración, ¿las recuerdan todos?*

Jurado: *Sí señor.*

Juez: *Todos manifiestan que las recuerdan.* Si por esas manifestaciones vertidas por la defensa y la manifestación vertida por el fiscal, si alguno de ustedes se siente *impedido* para no seguir las discusiones de este caso. ¿Alguno de ustedes?

Jurado: *No señor.*

Lcdo. Rodz.: Que conste su señoría nuestra objeción a esas instrucciones igual que las expresamos anteriormente . . . (No se entiende). . .

Juez: [¿]En alguna forma cualquier incidente ocurrido en el día de ayer *le impide a ustedes juzgar este caso a base de la prueba que se desfile ahí y sea admitida por el Tribunal.*[?]

Jurado: *No señor.*

Juez: ¿Alguno de ustedes tiene la *mente hecha o formada* en este caso?

Jurado: *No señor.*

Juez: Yo les advierto nuevamente que *al acusado se le presume inocente hasta tanto se pruebe su culpabilidad más allá de toda duda razonable.* Y esa duda contin[ú]a a través de *todo el proceso* hasta el momento en que luego de ustedes deliberar llegan a un veredicto o veredictos sobre cualquier[a] de las acusaciones que pesan contra él. En este caso sobre este acusado la ley es igual para todos los acusados.

*Los señores del jurado me han manifestado para el r[é]cord que no tienen ningún tipo de prejuicio, ni tienen una opinión formada, ni se han dejado influenciar por cualquier comentario que haya surgido en el día de ayer y que así se lo han manifestado al Tribunal. ¿No es correcto cuando digo eso?*

Jurado: *S[í] señor.*

Juez: ¿Alguna pregunta que quieran . . . (No se entiende) . . . hacer?

Lcdo. Rodz.: Nosotros ninguna su señoría. Solamente que conste nuestra objeción nuevamente a todas las instrucciones que está dando su señoría.

Juez: Fiscal . . .

Fiscal Umpierre: Ninguna por parte del Ministerio Público. Lo único que quisiéramos añadir es que el Ministerio Público solicitó al Tribunal esas instrucciones. (Énfasis suplido.) Apéndice de la moción informativa y réplica del peticionario, págs. 12–15.

En resumen, la "atmósfera total" —que como cuestión de realidad, es una más o menos densa en todo proceso criminal— aquí quedó aclarada. Si algo revelan los incidentes, es que no estamos ante una "conducta impropia, intencional y de mala fe" del Ministerio Público, que amerite la disolución del Jurado. Las instrucciones —suficientes, correctas y apropiadas— subsanaron el comentario.

Aunque aspiramos a que nuestro sistema de justicia se aproxime a la perfección, ello no es posible. Esa cualidad sólo la posee el Sumo Hacedor. Administrado por seres humanos, no puede pretenderse que durante la fluidez y dinámica del proceso no se susciten incidentes de distintos tipos, como tampoco pretender que el juzgador mantenga un *mutismo cartujano*. "*[E]l juez no tiene que tener la imperturbabilidad de un "Rhadamanthus"*." (Énfasis suplido.) *United States v. Dennis*, 183 F.2d 201, 226 (1950), Juez Learned Hand, citado en *Pueblo v. Díaz*, supra, pág. 395. El derecho a un juicio justo e imparcial no equivale a un juicio perfecto. *Pueblo v. Mattei Torres*, 121 D.P.R. 600 (1988); *Pueblo v. Díaz Ríos*, 107 D.P.R. 140, 143 (1978). No podemos pretender la asepsia típica de un laboratorio, como partir de la premisa de que cualquier irregularidad macula la facultad de los jurados para juzgar ecuánime e imparcialmente los casos.

La opinión de este Tribunal constituye una desviación irrazonable de esos principios jurisprudenciales. Para sostener el *mistrial*, ha resucitado un caso que descansaba en paz, *Pueblo v. Marchand Paz*, 53 D.P.R. 671, 683–684 (1938). Dis-

tinto al de autos, allí el comentario del Fiscal, en el turno de rectificación, *sin apoyo en la prueba*, fue "despectivo", a los efectos de que con posterioridad a la declaración del testigo que la defensa había llevado como autor del crimen, dicho testigo le había informado en su oficina que le habían ofrecido dinero para que se embarcara a Estados Unidos y así inculparlo del crimen.

Injustificadamente hoy la mayoría ha sustituido los papeles y cambiado los actores principales. A destiempo, ha mudado el estrado apelativo al Tribunal Superior, Sala de Caguas, y ocupado el de los jurados adjudicándoles una sensibilidad pasmosa y extrema, con el agravante que, por vía de escolio, en lugar de enjuiciar al acusado Robles González ha juzgado al juez de instancia. Con esa intervención se le ha negado a dicho magistrado la oportunidad de continuar el caso y al Jurado ejercer sus prerrogativas. Incidentalmente ha generado una innecesaria erogación de fondos públicos e indebida dilación. *Pueblo v. Bonilla Ortiz*, 123 D.P.R. 434 (1989).