# 99 DTA 127

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN**

EL PUEBLO DE PUERTO RICO
Recurrido

v.

EDDIE ACEVEDO MALDONADO
Acusado-Peticionario

Núm. KLCE-99-00245

San Juan, Puerto Rico, a 19 de marzo de 1999

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez González Román

Rodríguez de Oronoz, Jueza Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Se nos solicita que revoquemos la determinación del Tribunal de Primera Instancia, Sala Superior de San Juan (Hon. Lourdes Velázquez Cajigas), emitida el día 17 de marzo de 1999. Según el acusado-peticionario, mediante dicha determinación se denegó una solicitud para la recusación general del panel de jurados. Se nos solicita, además, que ordenemos la paralización de los procedimientos en el tribunal de instancia, hasta tanto nos pronunciemos en torno a la procedencia del recurso incoado. Por las razones que exponemos a continuación, denegamos la expedición del auto de *certiorari* y, en consecuencia, denegamos también la paralización de los procedimientos en el Tribunal de Primera Instancia.

### I

El día 27 de abril de 1998 se presentaron cargos contra el señor Eddie Acevedo Maldonado por el delito de tentativa de asesinato. Luego de los procedimientos preliminares requeridos por nuestro ordenamiento penal, se señaló el juicio para vista. ▉

Exponemos los hechos que suscitan la controversia según los relata el peticionario en su escrito. ▉ El día 15 de marzo, luego de llamado el caso para la continuación de la vista, la defensa solicitó la disolución del jurado y la posposición del juicio. Adujo la defensa que en una noticia publicada en la prensa y difundida por la radio se señalaba que el señor Eddie Acevedo Maldonado era reincidente habitual, que éste había amenazado al fiscal y a la perjudicada en el tribunal, que no deseaba ser representado por la Sociedad para la Asistencia Legal, que le admitió a la jueza que había cometido los hechos y que deseaba hacer alegación de culpabilidad a cambio de una sentencia de cinco (5) años. Argumentó la defensa que dicha noticia era inflamatoria y le violaba al acusado su derecho a juicio justo e imparcial, ya que contenía prueba que sería inadmisible en el juicio que no hubiese llegado a conocimiento del jurado de otra manera. Manifestó, además, que dado a la naturaleza y al carácter inflamatorio de la noticia, se entendía que el efecto perjudicial no podría ser subsanado por alguna instrucción especial.

El tribunal señaló que la situación podría ser subsanada por instrucciones, y que se desconocía si dicha información había llegado a conocimiento de los panelistas. Se procedió a celebrar una vista donde se entrevistó individualmente a los miembros de dos paneles de jurados para conocer el grado de contaminación o información perjudicial indebida que pudo llegar a conocimiento de éstos. De dicho interrogatorio surgió que los panelistas tenían conocimiento de la noticia. Los panelistas fueron examinados por el tribunal a los fines de que si, pese a tener conocimiento del contenido de la noticia, podían rendir un veredicto justo e imparcial. Todos los

panelistas declararon que le era posible rendir un veredicto imparcial. El tribunal decidió continuar con el trámite de selección de jurado de entre esos paneles.

El 16 de marzo de 1999 la representación legal del acusado solicitó la recusación general de los dos paneles de jurados en atención a la información obtenida durante el examen individualizado de sus miembros. Se alegó que la noticia publicada contenía información altamente inflamatoria y creaba perjuicio indebido al acusado, quien no podría disfrutar de un juicio justo e imparcial. Los potenciales candidatos a jurado, se adujo, habían obtenido información que no sería admisible en el juicio, como la admisión de culpabilidad formulada ante la jueza durante la información para negociación de la alegación pre-acordada, que éste deseaba declararse culpable si lo sentenciaban a cinco (5) años y que era reincidente habitual. Se argumentó que la información sobre negociaciones para una alegación de culpabilidad y la admisión de los hechos no podía ser subsanada por instrucciones especiales, ya que se había desvanecido la presunción de inocencia. Se indicó, además, que en un caso como este, el único remedio disponible era la disolución del panel de jurado y la posposición del juicio. Pese a los planteamientos formulados, el tribunal volvió a declarar *"no ha lugar"* la solicitud de la defensa y continuó con el proceso de selección de jurado. Inconforme con la continuación de los procesos, la representación legal del acusado acude a este tribunal señalando que erró el tribunal de instancia al no conceder la recusación general del panel de jurado.

## II

La norma general, en estos casos, descansa sobre la premisa de que la mera publicación de informaciones noticiosas en torno a un proceso judicial no perjudica por sí sola la garantía constitucional a un juicio justo, recayendo sobre el acusado demostrar lo contrario. A fin de demostrarlo, el acusado debe probar la existencia de publicidad parcializada, inflamatoria o tan intensa que de la misma pueda, a su vez, inferirse con razonable certeza una atmósfera de pasión contra el acusado, o que justifique el traslado del caso debido a la creación de una atmósfera de prejuicios, odios y pasiones contra dicho acusado o contra el Estado que sostiene la acusación. La clave en este tipo de situación se encuentra en determinar el estado mental que impera en los miembros del jurado. Por ende, la pregunta a hacerse no es si el jurado conoció o recuerda el caso en particular por los informes de prensa, sino si el jurado pudo, pese a ello, juzgar imparcialmente al acusado. Se ha indicado, como norma general, que un candidato a jurado no debe ser descualificado por el mero hecho de haber leído, visto o estado expuesto de cualquier otra forma a informaciones periodísticas. Debe examinársele en torno a cómo ha sido influido por la información concernida, teniendo siempre en cuenta que su exposición, incluso a publicidad inflamatoria, no descualifica al candidato a jurado a menos que admita haberla creído. Lo que debe evitarse es que los miembros del jurado advengan a juzgar con una opinión ya formada. Para prevenir que los jurados que finalmente se escojan tengan esta opinión ya formada, el tribunal puede tomar las siguientes medidas cautelares: a) permitir y llevar a cabo un *"voir dire"* extenso y riguroso; b) otorgar, si fuera necesario, recusaciones perentorias adicionales; c) aislar o secuestrar al jurado; y d) impartir instrucciones cuidadosas y exhaustivas al jurado sobre su responsabilidad de rendir un veredicto fundamentado exclusivamente en la prueba vertida durante el juicio y no a base de información obtenida de otras fuentes. *Pueblo v. Echevarría Rodríguez I,* 128 D. P.R. 299 (1991); *Pueblo v. Moreno Morales I,* 132 D.P.R. 261 (1992*); Pueblo v. Molinari Such,* ___ D.P.R. ___ (1994), **94 J.T.S 146;** *Pueblo v. Meliá León,* ___ D.P.R. ___ (1997), **97 J.T.S. 110.**

## III

Aplicando las normas expuestas al caso de autos, no encontramos meritorio expedir el auto. La etapa en que se presenta el caso no es la más propicia para su consideración. Regla 40(E), Reglamento del Tribunal de Circuito de Apelaciones.

El acusado nos solicita que ordenemos la recusación general de los paneles de jurado en atención a la información obtenida durante el examen individualizado de sus miembros. No obstante, el propio acusado nos

señala en su escrito que todos los panelistas que fueron examinados por el tribunal declararon que le era posible rendir un veredicto imparcial. Véase Petición de *Certiorari,* a la pág. 8. Por otro lado, nos parece prematuro el pasar juicio en este momento sobre si existe prueba de que el jurado tuviese una opinión formada. No hay constancia todavía del *"voir dire"* y, menos aún, de cómo la cobertura noticiosa del caso pudo afectar a los miembros del jurado en su función juzgadora. Es prematuro tambien enjuiciar en este momento las medidas que pueda tomar el juzgador para subsanar cualquier efecto que sobre el jurado pudo haber tenido la noticia publicada.

Por otro lado, la situación causada en este caso por la noticia publicada en los medios noticiosos no es comparable en estos momentos a la del caso en *Pueblo v. Robles González,* 125 D.P.R. 750 (1990). Allí el propio Ministerio Fiscal manifestó, en presencia de los señores del jurado, que dos co-acusados se encontraban en prisión por razón de que se habían declarado culpables del delito de asesinato en segundo grado, como consecuencia de una alegación preacordada, y que al acusado Robles González se le estaba haciendo la misma oferta. Por dicho incidente y porque las instrucciones que el juez de instancia transmitió para corregir el error cometido fueron unas endebles y genéricas, esto es, *"no fueron lo específicas, completas, enérgicas y severas que la situación y el perjuicio causado ameritaba"* el Tribunal Supremo decretó la disolución del jurado y ordenó la celebración de un nuevo juicio. En el caso ante nuestra consideración no se trata de una información que le llegó a los paneles del jurado de una fuente de tanta autoridad como el Ministerio Fiscal. Tampoco podemos apreciar en estos momentos las medidas cautelares que pudieran ser tomadas por el tribunal, incluyendo las instrucciones especiales, para subsanar cualquier perjuicio.

## IV

En atención a lo expuesto, resolvemos denegar el auto de *certiorari* solicitado. Queda denegada, en consecuencia, la moción en auxilio de jurisdicción. Somos del criterio que la etapa del procedimiento en que se presenta el caso no es la más propicia para su consideración. Regla 40, *supra.*

Notificar de inmediato por teléfono, vía facsímil y por la la vía ordinaria.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 99 DTA 127

**1.** Los señalamientos para la vista fueron transferidos en tres ocasiones a petición de la defensa.

**2.** La representación legal del acusado-peticionario informa en su escrito que los incidentes que suscitan el presente recurso tuvieron lugar el 15 de marzo de 1999, por lo que no se ha preparado la minuta ni resolución escrita.