EL PUEBLO DE PUERTO RICO, peticionario, *v.* RAMÓN B. GUERRERO MORALES, acusado y recurrido.

*Número:* CE-91-73          *Resuelto:* 12 de febrero de 1991

*Jorge E. Pérez Díaz, Procurador General,* y *Aida Ileana Oquendo Graulau, Procuradora General Auxiliar,* abogados de El Pueblo; *Carmen Ana Rodríguez Maldonado,* de la *División de Apelaciones de la Sociedad para Asistencia Legal,* abogada del recurrido.

## RESOLUCIÓN

A la solicitud de *certiorari* presentada por el peticionario, el Pueblo de Puerto Rico, no ha lugar.

*Esta resolución deberá ser notificada por la vía telefónica y la vía ordinaria.*

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió un voto disidente.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Negrón García.

## I

Ramón B. Guerrero Morales está siendo juzgado por jurado en el Tribunal Superior, Sala de Carolina (Hon. Hiram Sánchez Martínez, Juez), por asesinato en primer grado, tentativa de asesinato, apropiación ilegal e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 416 y 418, por hechos supuestamente ocurridos el 3 de junio de 1990.

La prueba del Ministerio Fiscal se inició el 25 de enero de 1991 y está adelantada. Al 31 de enero se habían presentado trece (13) testigos. En esta última fecha, mientras declaraba en el directo la testigo de cargo, policía Aida Montes, se suscitó el incidente siguiente:

[P. (FISCAL ALBERTO FOLCH DIEZ)]
P- Le pregunto si en relación con esa acta de confrontación, le pregunto, si se hace constar en el lugar en que ocurrieron los hechos.
R- Se hace constar que el día 3 de junio, por la Carretera 187, cerca del Kiosco número 64 . . .

LCDA. JUARBE:
Nosotros tenemos objeción a que ella repita los hechos.

HON. JUEZ:
Sí, el lugar de los hechos, termine de decirlo, agente.
R- De Isla Verde, había ocurrido un asesinato.

LCDA. JUARBE:
Esa es la objeción, a que vaya a hablar de los hechos en específico.

HON. JUEZ:
Es de lo que dice allí. *Ya las damas y caballeros del Jurado han escuchado que allí hubo un asesinato. Lo que se está juzgando es si hay prueba para establecer la culpabilidad del señor Guerrero más allá de duda razonable.*

LCDA. JUARBE:

Nosotros vamos a solicitar acercarnos al estrado.

HON. JUEZ:

Sí, cómo no.

(LAS PARTES SE ACERCAN AL ESTRADO). (Énfasis suplido.) Apéndice II, pág. 8.

Ante esa objeción, el ilustrado juez de instancia inmediatamente impartió unas extensas instrucciones remediales, que por su claridad e importancia transcribimos:

HON. JUEZ:

Damas y caballeros del Jurado, la defensa tiene razón. La determinación, en el planteamiento que está haciendo, la determinación número uno que ustedes van a *tener que hacer aquí es si allí ocurrió un asesinato o no*. Así es que eso es una determinación *exclusivamente de ustedes* en primer lugar. En segundo lugar, la estoy declarando con lugar. Al agente, que cuando se refiera al documento, que no repita nuevamente los hechos, porque *son hechos* que fue lo que quiso decir el Tribunal, que han estado virtiéndose una y otra vez sobre el hecho de que, *desde el punto de vista de los testigos*, allí *ocurrió un asesinato* y eso es lo que realmente nos estamos refiriendo. *El aspecto legal, jurídico de responsabilidad penal, sobre si existe tal cosa como un asesinato, es una cuestión que corresponde única y exclusivamente a ustedes*. Así que, lo que *quiero enfatizar* con la explicación que le he dicho, *que se ha mencionado aquí que ha habido un asesinato es, que del documento de la Policía, del testimonio de cada uno de los testigos, ellos han expresado aquí que allí ocurrió un asesinato*, pero, número uno, si ocurrió un asesinato o no allí, le repito que *es una determinación que ustedes* van a hacer a base de la prueba que desfile en este caso, *única y exclusivamente a base de la prueba que desfile en este caso*. Y lo segundo que van a tener que decidir a base de esa prueba es, si la persona que cometió el delito, si ustedes determinan a base de la prueba que ha desfilado que se cometió allí un asesinato, desde el punto de vista legal, que hubo un asesinato, lo segundo que van a determinar es, *si la persona del acusado, si el Fiscal ha traído aquí prueba suficiente, más allá de duda razonable para vincular al señor acusado con la comisión de ese delito*. Son dos partes en la determinación que van a hacer ustedes.

LCDA. JUARBE:

Una vez hayan escuchado toda la prueba.

HON. JUEZ:

Una vez y, por supuesto, *bajo las explicaciones que le hemos dado siempre*, de que es una vez hayan escuchado toda la prueba. No solamente toda la prueba del Fiscal, sino toda la prueba de defensa. Porque aquí la defensa en este caso ya ha anticipado que se propone presentar unos testigos de defensa. Así que, *repito*, para que *quede bien claro y si hay alguno que no lo entiende, por favor, levante la mano*.

Cuando me referí que aquí había un asesinato, me refería a que el *papel* habla allí de unos hechos ocurridos de sangre, lo que me referí es a lo que *han estado declarando los testigos, de la percepción de los testigos. De ese punto de vista únicamente. No constituye una conclusión del Tribunal de que es, de que allí ocurrió un asesinato, porque, repito, eso les toca a ustedes y solamente a ustedes. Y ustedes no pueden tomar en consideración ninguna otra cosa, absolutamente ninguna otra cosa que no sea la prueba que desfile aquí. Ni siguiera los comentarios del abogado, del Fiscal, de la señora abogada o de este Juez. Ni siguiera lo que aparece en los papeles que se han marcado aquí como exhibits. Si apareciera allí la palabra homicidio, si apareciera allí la palabra asesinato, cualquier calificación de delito que aparezca en esos papeles, son puramente informaciones para fines de la Policía o percepciones para fines de los testigos.* Es importante que *quede claro* que ninguna información que aparezca allí *ni ningún comentario*, de ninguno de los abogados, ni del *Juez, constituye prueba en este caso. La prueba es la que el Tribunal Admita.* Así que, la objeción de la compañera, ha lugar. (Énfasis suplido.) Apéndice II, pág. 10.

Resuelto así el incidente, con la objeción de la defensa a esas instrucciones, el tribunal autorizó al Ministerio Fiscal a terminar el interrogatorio de la testigo Morales. Se celebró después una reunión en cámara. Finalmente, debido a la hora, se recesó hasta el lunes 4 de febrero. Ese día, la defensa reiteró *verbalmente y en ausencia del Jurado* su pedido de disolución. Se basó en que el comentario del juez antes referido lesionó el derecho del acusado Guerrero Morales a un juicio justo e imparcial. El Ministerio Fiscal se opuso. Argumentó que las instrucciones impartidas por el tribunal subsanaron cualquier efecto perjudicial.

Sometido el asunto, al día siguiente, el tribunal reconsideró y estimó necesario disolver el Jurado por entender que su comentario constituía un "error grave, perjuicial, sustancial e insubsanable". Apéndice I, pág. 2. Pospuso la ejecución de ese dictamen para el lunes 11 de febrero de 1991.

A solicitud del Ministerio Fiscal, el 7 de febrero expedimos orden para mostrar causa y paralizamos los trámites. Discrepamos de la negativa del Tribunal a revocar.

## II

Con toda la deferencia que merece el juez de instancia, aquilatado el incidente en su justa perspectiva, procede revocar y ordenar la culminación del proceso ante el *mismo Jurado*. Y es que la disolución del Jurado es una medida extraordinaria para corregir irregularidades que impidan un veredicto "justo e imparcial". Regla 144 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Nos explicamos.

Aunque aspiramos a que todo juicio sea *perfecto*, ello sólo es atributo del Sumo Hacedor. Por ende, todo error o irregularidad no es automáticamente caracterizable como perjuicial e insubsanable. Aun en situaciones de perjuicio —admisión errónea de evidencia o comentarios impropios de los protagonistas— una instrucción oportuna y específica al Jurado puede subsanarlo. *Pueblo v. Robles González*, 125 D.P.R. 750 (1990); *Pueblo v. Suárez Fernández*, 116 D.P.R. 842, 850–857 (1986); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 152 (1985); *Pueblo v. López Camacho*, 98 D.P.R. 700, 703 (1970); *Pueblo v. Cotto Torres*, 88 D.P.R. 23 (1963); *Pueblo v. Verdejo Meléndez*, 88 D.P.R. 207, 216 (1963). A fin de cuentas, nunca le hemos atribuido a los jurados una hipersensibilidad desmedida. *Pueblo v. Guzmán Camacho*, 116 D.P.R. 34, 37–38 (1984); *Pueblo v. Dones Arroyo*, 106 D.P.R. 303, 311 (1977); *Pueblo v. Andrades González*, 83 D.P.R. 849, 859–860 (1961).

## III

Los hechos y circunstancias particulares ante nos reflejan, en primer lugar, la etapa avanzada del incidente. El Ministerio Fiscal

había presentado en evidencia trece (13) testigos de cargo; tres (3) fueron estipulados y once (11) declararon. De estos once (11), se aduce que seis (6) fueron testigos *presenciales* y dos (2) de ellos identificaron al acusado Guerrero Morales como uno de los participantes.

En lo documental, se habían estipulado varias fotos del cadáver, el protocolo de autopsia y el testimonio de la patóloga forense.

*Esta prueba no se dio en el vacío ni en un laboratorio aséptico.* Se desfiló ante el Jurado, quienes como seres humanos ya habían oído testimonios sobre la forma y manera en que se produjo la muerte. Según surge de las propias instrucciones impartidas, algunos de esos testigos usaron el vocablo "asesinato". Apéndice II, págs. 9–10. Con la agente Aida Montes, se comenzó a autenticar el contenido de las Actas preparadas en las ruedas de confrontación celebradas para la identificación del entonces sospechoso, precisamente el acusado Guerrero Morales.

Antes de que ocurriera el incidente, la agente Montes había atestado sobre una de las Actas, la marcada Identificación XXVIII del Pueblo (Apéndice III) y T.E., págs. 1–4 (Apéndice II, pág. 4–7). De esa surge que la *Rueda de Confrontación* sobre la cual declaraba la testigo consignaba el delito imputado en la querella de *"Asesinato* y otros".

Ante la realidad de que frente al Jurado el vocablo "asesinato" no era extraño, de que se había desfilado prueba al efecto, y en consideración de la claridad, especificidad, integridad y énfasis de las instrucciones del Juez, no podemos atribuirle a su comentario aislado y único un perjuicio insubsanable. No procedía su disolución. Aun en los procesos judiciales, el aborto es una medida radical de último extremo.

Por los fundamentos expuestos, disentimos.