*1027 TEXTO COMPLETO DE LA SENTENCIA
El apelante, señor Sergio Siberio Ramos, solicita la revocación de la sentencia emitida el 15 de marzo de 2000, por el Tribunal de Primera Instancia, Sala Superior de Bayamón, declarándolo culpable de homicidio involuntario.
Por los fundamentos expuestos a continuación, se confirma la sentencia apelada.
I
En horas de la tarde del sábado 23 de enero de 2000, el señor Sergio Siberio Ramos (Siberio), agente del Negociado Federal de Investigaciones (FBI), se dirigía en su vehículo oficial a supervisar un servicio especial de su Agencia que se iba a realizar en la jurisdicción de Aguadilla. El señor Siberio salió de su residencia en Dorado y tomó la Carretera Estatal Número 2 de Bayamón hacia Arecibo para llegar a la autopista y seguir hacia Aguadilla. Mientras conducía su automóvil por el carril izquierdo de la citada carretera, al llegar a la intersección donde se encuentra el negocio "Bay Burger", impactó al peatón, señor Angel López Delgado, quien se encontraba en dicha intersección. El señor López falleció a consecuencia del impacto recibido y Siberio fue acusado por el delito de homicidio involuntario, Artículo 86 del Código Penal de Puerto Rico. Luego de los trámites procesales correspondientes, se celebró el juicio en su fondo, y el 23 de noviembre de 1999, el jurado que lo juzgó emitió veredicto de culpabilidad por el delito imputado.
Inconforme con dicha determinación, el señor Siberio presentó oportunamente su escrito de apelación en el que señala la comisión de los siguientes errores:

"Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al permitir al fiscal desarrollar una línea de interrogatorio a los efectos que el acusado había trabajado como agente encubierto en la división de drogas del cuerpo de la Policía de Puerto Rico y que lo entrenaron para mentir bajo juramento, y que por ese motivo, el acusado mintió al declarar bajo juramento en la silla de los testigos, ello es a todas luces expresiones inflamatorias que lesionan el derecho del acusado a un juicio justo e imparcial.

Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al permitir la inferencia presentada por el Fiscal que en Puerto Rico los conductores dejan pasar 'hasta las vacas cuando cruzan por la carretera y el acusado no tuvo el reparo y mató a un ser humano,' lesionando, entre otros derechos, el derecho a un juicio justo e imparcial.

Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al permitir al Fiscal, en su turno final de argumentos al jurado, pedirle al jurado que emitieran un veredicto de culpabilidad en este caso, porque, a fin de cuentas, 'este es un caso menos grave y al acusado no lo van a enviar a la cárcel y lo van a sentenciar a una probatoria', ello lesionó, entre otros derechos, el derecho del acusado a un juicio justo e imparcial.

Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al aceptar un veredicto de culpabilidad y declarar culpable y convicto al acusado a base de prueba conflictiva e insuficiente en Derecho para establecer su culpabilidad más allá de duda razonable."

El Pueblo de Puerto Rico presentó su informe el 21 de noviembre de 2001, y con el beneficio de la comparecencia de ambas partes y de la transcripción de los procedimientos, pasamos a resolver.
*1028 II
Discutiremos los primeros tres errores conjuntamente para corresponder a los formatos del apelante y del Pueblo de Puerto Rico.
De entrada cabe señalar que de un examen de la transcripción de vista en su fondo queda evidenciado que las expresiones o comentarios que dan lugar a los primeros tres señalamientos de error son inexactos e impresisos.
El primer señalamiento de error, le atribuye al Tribunal de Instancia haberle permitido al Fiscal una línea de interrogatorio a los efectos de que cuando el acusado trabajó de agente encubierto de la división de drogas de la policía "lo entrenaron para mentir bajo juramento, y que por ese motivo, el acusado mintió al declarar bajo juramento en la silla de los testigos". Alega el apelante que dichas expresiones son "inflamatorias" y lesionaron su derecho a un juicio justo e imparcial y que ello constituye un error revocable.
El apelante no nos señala la cita específica de dichas expresiones en la transcripción de vista en su fondo. Debe referirse a la siguiente expresión del fiscal, que es la única que hemos encontrado relacionada al primer error:
"Y este acusado muy brillantemente, porque había sido Agente Encubierto, sabe testificar, sabe cuándo llorar. No es como estas personas, seres humanos que nunca han venido al Tribunal, ... Este no, este fue adiestrado pa' ser Agente Encubierto, para envolverse en el bajo mundo, para mentir...". (Transcripción de vista en su fondo, 23 de noviembre de 1999, pág. 26)
En el segundo señalamiento de error, se le atribuye al Tribunal de Instancia haber permitido que se lesionara el derecho del apelante a un juicio justo e imparcial, al permitirle al Fiscal la inferencia de que en Puerto Rico los conductores dejan pasar "hasta las vacas cuando cruzan por la carretera y el acusado no tuvo el reparo y mató a un ser humano". Tampoco nos señala el apelante la cita específica en la transcripción en que basa su señalamiento. Como cuestión de hecho, no encontramos expresión alguna sobre "vacas cruzando la carretera" del examen que hiciéramos de la transcripción.
De otra parte, el tercer error señalado le atribuye al Tribunal de Instancia haber permitido al Fiscal pedirle al Jurado un veredicto de culpabilidad expresando "porque, al fin de cuentas", "este es un caso menos grave y al acusado no lo van a enviar a la cárcel y lo van a sentenciar a una probatoria", lesionando, entre otros, el derecho del acusado a un juicio justo e imparcial. De igual forma, el apelante omitió señalar la cita específica de la transcripción en que apoya su señalamiento.
La siguiente es la expresión del fiscal relacionada a los señalamientos de error segundo y tercero, que hemos logrado identificar en la transcripción de los procedimientos:
“Digamos la verdad. Y aquí hay una persona... Lo que pasó es sencillo, se enfuscó, cambió de carril, el cruce y se encontró con el peatón parao' allí y se lo llevó. Y cuando yo le preguntaba al policía retirado que trabajó en Morovis en mi pueblo, en las carreteras rurales si usted ve a un gallina, usted parara... parara... reduce la velocidad en el campo; porqué no lo hizo un ser humano. Se lo llevó enredao'y eso es imprudencia al conducir, es negligencia perdonable, que tiene probatoria; esto es un delito menos grave.” (Enfasis suplido) (Transcripción de vista en su fondo, 23 de noviembre de 1999, pág. 43)
Como es sabido, la Constitución del Estado Libre Asociado de Puerto Rico, 1 L.P.R.A. sec. 11, art. II, consagra, en lo pertinente, el derecho de todo acusado a que se demuestre su culpabilidad más allá de duda razonable en juicio público, justo e imparcial. En igual medida, nuestro Tribunal Supremo ha expresado que la Regla 144 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, en cierta forma viabiliza y garantiza el derecho constitucional antes mencionado. La antedicha regla establece lo siguiente:

*1029
"El tribunal podrá ordenar la disolución del jurado antes del veredicto en los siguientes casos:

(a)...

(b)...

(c)...

(d) Si se hubiere cometido algún error o se hubiere incurrido en alguna irregularidad durante el proceso que, a juicio del tribunal, le impidiere al jurado rendir un veredicto justo e imparcialj...]."

Sin embargo, no "todo error o irregularidad... es automáticamente caracterizable como perjudicial e insubsanable. ” Pueblo v. Guerrero Morales, 127 D.P.R. 958 (1991). Cónsono con lo anterior, nuestro más Alto Foro ha señalado que como norma general y en circunstancias ordinarias, una instrucción oportuna y específica al Jurado por parte del magistrado que preside los procedimientos puede subsanar el efecto perjudicial que sobre el Jurado pudiera tener la admisión errónea de evidencia o los comentarios impropios provenientes de alguno de los protagonistas. Pueblo v. Robles González, 125 D.P.R. 750 (1990); Pueblo v. Suárez Fernández, 116 D.P.R. 842(1986).
En igual medida, cabe señalar que:
"[...]Aun suponiendo que el fiscal hizo manifestaciones impropias en su discurso, no procede una revocación, a menos que se pruebe que ocasionaron perjuicio a los derechos sustanciales del acusado, es decir, que el veredicto fue influenciado por esa conducta. Además, la advertencia o instrucción del juez al jurado de que no debe tomar en consideración un argumento impropio del fiscal, subsana generalmente cualquier error; salvo en casos excepcionales en que nada podría borrar los efectos perjudiciales contra el acusado[...]”. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Columbia, 1992, vol. II, pág. 329.
Es decir, "[e]l acusado que alegue error perjudicial, no puede descansar en el precepto o la expresión dogmática. Deberá demostrar que la decisión o actuación objetada tuvo impacto y relieve perceptible en la objetividad del juicio". Pueblo v. Figueroa Rosa, 112 D.P.R. 154, 161 (1982).
En el caso ante nos, al atender las objeciones y planteamientos de la defensa del apelante a las expresiones del Fiscal antes transcritas, el Tribunal de Instancia concluyó correctamente que las mismas no constituyeron un error sustancial que justificara decretar un "mistrial", e instruyó al jurado a no tomarlas en consideración para evitar cualquier daño al apelante. Además, le hizo las debidas advertencias al Ministerio Público respecto a sus comentarios impropios y reprochables. (Transcripción de vista en su fondo, 23 de noviembre de 1999, págs. 46-52)
Estamos convencidos que las expresiones del Ministerio Fiscal sobre los primeros tres señalamientos de error, que hemos citado, no fueron, inevitablemente, determinantes del resultado del proceso. No podemos asumir que un jurado sea tan susceptible que cualquier expresión como las señaladas pudiera afectar su facultad para rendir un veredicto justo e imparcial. Pueblo v. Ríos Alvarez, 112 D.P.R. 92, 126 (1982); Pueblo v. Hernández Santiago, 97 D.P.R. 522 (1969); Pueblo v. Andrádes González, 83 D.P.R. 849, 860 (1961). Dichas expresiones están enmarcadas dentro de la gran liberalidad que gobierna los informes finales, al jurado, reiterada consecuentemente por el Tribunal Supremo. Véase, Pueblo v. Fournier, 80 D.P.R. 390, 407-409 (1958); Pueblo v. Ortiz Rodríguez, 103 D.P.R. 368 (1975); Pueblo v. González Colón, 110 D.P.R. 812 (1981); Pueblo v. Suárez Fernández, 116 D.P.R. 842, 851 (1986).
El apelante tenía que demostrar que las expresiones del Fiscal fueron procesalmente espúreas y constituyeron un factor determinante en el veredicto adverso del jurado, y no logró hacerlo. Por lo que entendemos que no se cometieron ninguno de los tres errores antes señalados.
*1030 III
El cuarto señalamiento de error cuestiona al Tribunal de Instancia por haber aceptado un veredicto de culpabilidad a base de prueba alegadamente conflictiva e insuficiente.
Al señor Siberio se le imputó el delito de Homicidio Involuntario contemplado en el Artículo 86 del Código Penal, 33 L.P.R.A. see. 4005, que en lo pertinente, se define como sigue:

"Toda persona que obrando con negligencia o que al realizar un acto ilegal que no constituye delito grave, ocasionara muerte a otra, será sancionada con pena de reclusión por un término fijo de ...

[■■.]".

No empece lo dispuesto en la see. 3044 de este título, el delito de homicidio involuntario, según expuesto en la presente sección, se considerará delito menos grave y el acusado tendrá derecho ajuicio por jurado. ”

Es evidente que dicho artículo presenta dos modalidades: (1) ocasionar la muerte a una persona a causa de obrar negligentemente, y (2) ocasionar la muerte a una persona al realizar un acto ilegal que no constituyese delito grave. Bastaría entonces que el juzgador de los hechos determinase que el acusado ha incurrido en cualquiera de estas dos modalidades para establecer la infracción dispuesta en la ley. Pueblo v. Ruiz Ramos, 125 D.P.R. 365 (1990); Pueblo v. Rivera Rivera, 123 D.P.R. 739 (1989). Con relación a la ocurrencia de una muerte como consecuencia de un acto ilegal que no sea delito grave, la relación causal entre el acto ilegal y la muerte debe sér de naturaleza próxima. En esta modalidad, el acto ilegal se refiere a delitos menos graves. Pueblo v. Ruiz Ramos, supra. Por otro lado, cuando se trata de muertes causadas por la comisión de actos ilegales, realizados por conductores de vehículos de motor que no equivalen a delitos menos graves, se considerarán en la modalidad de negligencia. Id.
A tono con lo anterior, es menester señalar que el Código Penal de Puerto Rico, supra, define en su artículo 16, 33 L.P.R.A. see. 3063, la figura de la negligencia criminal de la siguiente manera:

"Responde por negligencia, la persona que haya producido un resultado delictivo sin quererlo, por imprudencia o descuido, o falta de circunspección o impericia o por inobservancia de la ley."

Ello pone de manifiesto que los elementos esenciales del delito de homicidio involuntario, en esta modalidad, son la acción negligente del acto, y como resultado, la muerte de un ser humano. En el caso ante nuestra consideración, la prueba versó sobre los elementos que deben estar presentes para que se configure el delito de homicidio involuntario y enlazó al acusado con los hechos imputados. Veamos.
La señora Alída González De La Cruz (testigo de cargo) declaró que en la tarde del 23 de enero de 1999, a eso de las 3:30 de la tarde, ella transitaba por el carril de la derecha de la Carretera número dos (2) de camino para su trabajo y observó que el automóvil conducido por el señor Siberio, que viajaba detrás de ella, se cambió al carril de la izquierda y la rebasó. Instantes después, ésta observó cuando el referido automóvil impactó a un peatón que iba cruzando desde el carril de la izquierda hacia el carril de la derecha. El peatón (señor López) fue impulsado con el impacto dando vueltas en el aire y cayó al piso, sin vida. Declaró, además, que cuando el automóvil del señor Siberio la rebasó, ella transitaba a 40 millas por hora; que había muchos drones anaranjados y blancos porque había una construcción; y que había semáforo, pero no funcionaba desde hacía varios años. (Transcripción de la vista el 10 de noviembre de 1999, a las págs. 97-118).
A su vez, el 10 de noviembre de 1999, prestó su testimonio el señor Armando Rodríguez Ayala, compañero de trabajo del señor López. Del mismo se desprende que el día de los hechos, el señor López se trasladó en el carro del señor Rodríguez por la carretera número dos (2) de Vega Alta hacia Bayamón hasta desmontarse del automóvil en el carril izquierdo (al lado opuesto del mencionado negocio "Bay Burger"). Con respecto a ello, *1031 éste expresó lo siguiente:

P: ¿Y qué pasó entonces, usted lo dejó allí, qué paso?

R: Yo me "parqueo". Me "parqueo". Se me "apea" del carro. Se tira a cruzar.

P: ¿Cómo usted lo llamaba a él?

R: Yo lo llamaba a él por "Cuchi".

P: ¿ "Cuchi"?

R: "Cuchi", yo lo llamaba el apodo.

P: ¿Y qué pasó entonces?

R: Pues entonces se tiró él a cruzar. El miró. Cuando él miró, pues, no ve carro no ve carro ninguno.

LCD A NIEVES: Hay una objeción a lo que declara.

JUEZ: Acérquense las partes, si son tan amables. Adelante.

FISCAL NUÑEZ: P: Usted diga lo que usted, no lo que vió el, el, el Sr. Angel López...

JUEZ: De lo que usted pudo observar. Lo que usted vio.

TESTIGO: R: Yo vi cuando él se tira cruzando. El se para en el medio donde está el muro que ponen en el medio.

FISCAL NUÑEZ: P: Ahí vamos con calma, ahí vamos con calma. O sea, ya había pasado para ponerse en el mismo medio había pasado cuántos carriles.

R: Ya había pasado dos (2) carriles derecho los "bía"pasado ya. Cuando para entonces...

P: Carriles derechos.

R: Unjú.

P: ¿Cómo estaba el tránsito allí, lo que usted vio?

R: Para el momento que ... cruzar no venía ningún vehículo.

P: ¿Los dos (2) carriles esos?

R: Estaban vacíos, los dos (2) carriles derechos estaban vacíos.

P: Y, entonces, cruza esos dos (2) carriles...

R: Y se para en el medio de donde está el muro en el medio de la carretera en cemento, ahí se para él en el medio.

P: Ajá. ¿Y, entonces, qué sucede?

*1032
R: Pues yo veo que él mira. Veo que él mira. ... cuando yo veo otra vez nuevamente cuando se tira a cruzar ahí es cuando veo que sale volando.

P: Le pregunto yo antes de que usted dice que lo ve volando, qué le ocurrió. El estaba caminando o corriendo o corriendo... cómo estaba él.

R: El cruzó caminando.

P: ¿Caminando?

R: Caminando.

P: ¿Ese caminar era rápido o lento o cómo?

R: No. Era un caminar normal.

P: Normal. ¿Dónde está el cruce de peatones alU?

R: El cruce de peatones estaba ... al lado derecho, hablándole de Vega Alta hacia Bayamón al lado derecho.

P: Entonces qué sucede cuando él está ahí.

R: ¿ Cruzando la ... ?

P: Ajá. En el punto ahí entre medio de los dos (2) lados.

R: Pues él lo veo que mira para arriba, mira para abajo cuando veo que él viene se tira a cruzar, ahí es que veo que sale elevado. Cuando sale elevado es que veo yo dando dos vueltas en el aire con el cuerpo derecho. Da dos vueltas en el aire cuando cae... Cuando cae, pues entonces yo...

P: ¿Cayó a qué distancia de ese lugar? ¿ Usted sabe dibujar?"

(Transcripción de la vista, 10 de noviembre de 1999, a las págs. 123-126).

En igual medida, de la transcripción de la vista antes señalada, surge que la testigo Alida González De La Cruz declaró que no vió frenar al señor Siberio y que el testigo Armando Rodríguez Ayala declaró que no vió el carro del señor Siberio ni escuchó frenazo alguno. (Transcripción de la vista, 10 de noviembre de 1999, a las págs. 116-117, 133-134). Cabe señalar además que de la prueba vertida en el juicio, surge que a raíz del impacto recibido, el cuerpo del señor López cayó a 101 pies del lugar del impacto.
Por su parte, la prueba ofrecida por el apelante giró en tomo a que el negligente fue el occiso, que se tiró a cruzar sin tomar las debidas precauciones e impactó con sus piernas el vehículo del apelante.
Nuestro Tribunal Supremo ha expresado que en ausencia de pasión, prejuicio, parcialidad o error manifiesto, no estamos autorizados a intervenir con la apreciación de la prueba realizada por el tribunal apelado. Belk Arce v. Martínez, 146 D.P.R._(1998), opinión emitida el 30 de junio de 1998, 98 J.T.S. 92; Flores v. Sociedad de Gananciales, 146 D.P.R. _(1998), opinión emitida el 30 de junio de 1998, 98 J.T.S. 96. Asimismo, tampoco podemos intervenir con la adjudicación de credibilidad de los testigos realizada por el foro apelado en ausencia también de pasión, prejuicio parcialidad o error manifiesto. López Vicil v. ITT Intermedia, 142 D.P.R. 857 (1997). Adviértase que fue dicho foro quien tuvo la oportunidad de ver y oír declarar los testigos y apreciar su demeanor. Por tanto, indudablemente es el tribunal apelado quien está en la mejor *1033 posición de aquilatar la prueba testifical. Id. Cónsono con lo anterior, la mera existencia de prueba conflictiva no constituye un error manifiesto. Por el contrario, es forma reiterada que cuando existe un conflicto entre las pruebas, corresponde precisamente al juzgador de los hechos dirimir ese conflicto. Sanabria v. Sucesión González, 82 D.P.R. 885 (1961); Méndez v. Kraidman, 63 D.P.R. 281 (1944).
En conclusión, al considerar la totalidad de la prueba presentada en el juicio, concluimos que existía la evidencia suficiente para justificar la decisión emitida por el foro sentenciador y que la culpabilidad del apelante quedó probada fuera de toda duda razonable. No se cometió el cuarto error señalado.
IV
Por los fundamentos anteriormente expuestos, se confirma la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General