ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br><br>V.<br><br>JOSÉ ÁNGEL LUGO LÓPEZ<br><br>Recurrido | TA2025CE00476 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: ISCR201800289-290<br><br>Sobre:<br><br>A133/ Actos Lascivos |
|---|---|---|

Panel integrado por su presidenta, la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 20 de octubre de 2025.

El peticionario, Pueblo de Puerto Rico (el Pueblo o Ministerio Público) nos solicita la revisión de la *Resolución* emitida por Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI o foro primario), el 1 de julio de 2025. Mediante esta, el referido foro ordenó la disolución del Jurado.

Examinado recurso y su oposición, expedimos el Auto de *Certiorari y revocamos la Resolución contra la que se recurre*.

## I.

El 5 de abril de 2018, por hechos ocurridos entre el 2013 y 2015, el Ministerio Público presentó dos acusaciones contra el recurrido por infringir el Artículo 131 sobre incesto del Código Penal de 2012, 33 LPRA sec. 5192; y por otra infracción al Artículo 133 (A) sobre actos lascivos del Código Penal de 2012, cuando la

víctima era menor de dieciséis años, 33 LPRA sec. 5194.[1] En esencia, el Pueblo imputó al señor José Ángel Lugo López (señor Lugo López o recurrido), quien es el padre biológico de la menor, el haber cometido los delitos mencionados cuando la víctima tenía entre cinco (5) y seis (6) años de edad. Los hechos alegados leen del siguiente modo:

> Art. 131 del Código de Penal de 2012
> El referido acusado JOSÉ ÁNGEL LUGO LÓPEZ, allá en o desde 2013 al 2015, en Añasco, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, ilegal, voluntaria y criminalmente, quien tiene una relación de parentesco, por ser ascendiente o descendiente por consanguinidad, (padre), hasta el tercer grado, y quien poseía la custodia física y patria potestad con la menor L.L.A., a propósito, con conocimiento y temerariamente, llevó a cabo con esta, en varias ocasiones, una penetración sexual vaginal y anal, esta de forma genital y digital. Consistente en que, siendo José A. Lugo López, padre biológico de L.L.A., la tocó en varias ocasiones en el área de su vagina y ano y la penetró con sus dedos y pene en su vagina y ano, diciéndole que no podía decir nada a nadie.
>
> Art. 133 (A) del Código Penal de 2012
> El referido acusado, JOSÉ ÁNGEL LUGO LÓPEZ, allá en o desde el año 2013 al 2015, en Añasco, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala Superior de Mayagüez, ilegal, voluntaria, criminalmente, sin intentar consumar el delito de agresión sexual (Art. 130 del Código Penal), sometió a la menor L.L.A., menor de dieciséis (16) años de edad, a propósito, con conocimiento o temerariamente, a un acto que tendió a despertar, excitar o satisfacer la pasión o deseos sexuales del imputado. Consistente en que el acusado tocó a la menor en varias ocasiones en el área de su vagina y ano.[2]

El 29 de marzo de 2022, inició el juicio por Jurado contra el recurrido. Allí, celebrándose por circuito cerrado el testimonio de la víctima, el interrogatorio de LMLA se vio interrumpido, ya que esta entró en llanto y se vio imposibilitada de declarar. Posteriormente, fue acompañada al baño por la técnica de asistencia a víctimas y testigos, y allí se desmayó, quedando inconsciente. Por esto, fue trasladada al Hospital San Antonio en

---

[1] Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).
[2] Íd.

Mayagüez y posteriormente al Hospital Metro Pavía de Cabo Rojo donde se le realizó una evaluación psiquiátrica.

A raíz de este incidente, el 31 de marzo de 2022, el Ministerio Público presentó una *Moción Informativa y en Solicitud de Sustitución de Testimonio*, mediante la cual, arguyó que el estado emocional de LMLA le impedía declarar contra el señor Lugo López, y que, en atención a ello, procedía que se sustituyera su testimonio por el que prestó en la vista preliminar. [3] Esto, como una medida para proteger su integridad física y emocional.[4]

Más tarde, el 21 de junio de 2022, el TPI celebró una vista conforme a la Regla 109(A) de Evidencia, 32 LPRA Ap. VI, en la que comparecieron tres (3) facultativos médicos, quienes declararon sobre el estado emocional de LMLA cuando esta fue hospitalizada. Posteriormente, el Pueblo y el señor Lugo López presentaron sendas comparecencias por escrito. Así, el 5 de agosto de 2022, el TPI notificó una *Resolución* a través de la cual denegó la solicitud del Ministerio Público y razonó que no procedía declarar a LMLA como una testigo no disponible.[5] Luego, el Pueblo recurrió ante este Tribunal de Apelaciones mediante el recurso KLCE202201125. El 12 de diciembre de 2022, este foro apelativo emitió una *Sentencia*, en la cual expidió el auto de *certiorari* y confirmó la decisión emitida por el foro primario.

Así pues, el Pueblo acudió ante el Tribunal Supremo través del recurso de *certiorari* CC-2023-0109. El más Alto Foro expidió el auto en reconsideración y emitió una *Opinión* en el caso Pueblo v. Lugo López, 214 DPR 660 (2024). Allí, revocó la *Sentencia* del Tribunal de Apelaciones. Al respecto, nuestro más alto foro local

---

[3] Entrada #4 de SUMAC TPI.
[4] Íd.
[5] Entrada #7 de SUMAC TPI.

pautó los criterios a considerar ante una petición de indisponibilidad amparada en la Regla 806(A)(4) de Evidencia, *supra*. Por tanto, el Tribunal Supremo devolvió la controversia al foro primario para la celebración de una nueva vista de necesidad.

Tras algunos incidentes procesales, y en cumplimiento con lo ordenado por el Tribunal Supremo, la nueva vista de necesidad se celebró el 11 de octubre de 2024. En esta audiencia, compareció la Dra. Frances J. Seda Seda ("doctora Seda Seda"), quien posee un doctorado en psicología clínica y cuenta con vasta experiencia en casos de abuso sexual, como perita del Estado. El 17 de octubre de 2024, el TPI emitió una *Resolución* en atención al testimonio vertido por la doctora Seda Seda y a las guías del Tribunal Supremo, determinó que LMLA es una testigo no disponible bajo la Regla 806(A)(4) de Evidencia, *supra*.

Por consiguiente, ordenó que se sustituyera el testimonio de la perjudicada por el que esta prestó en la etapa de vista preliminar. Oportunamente, el recurrido solicitó la reconsideración de este dictamen; empero, no prosperó su reclamo. A raíz de la determinación de no disponibilidad, el señor Lugo López recurrió ante el foro apelativo mediante el recurso de *certiorari* KLCE202401377, donde sostuvo que el foro primario incidió al concluir que LMLA estaba indisponible por razón de su condición mental. No obstante, el 24 de febrero de 2025, el foro apelativo emitió una *Resolución*, en la cual denegó la expedición del recurso de *certiorari*. Aún insatisfecho, el señor Lugo López recurrió ante el Tribunal Supremo de Puerto Rico mediante el recurso de *certiorari* CC-2025-0216, cuya expedición se denegó. Por lo tanto, la indisponibilidad de la menor LMLA como testigo es una controversia final y firme en la actualidad.

Luego de algunos incidentes procesales, el foro primario retomó los procesos y les ordenó a las partes que expusieran su posición sobre la posibilidad de disolver el Jurado, esto, en consideración al extenso trámite del caso y sus particularidades. Por un lado, el señor Lugo López en su *Moción en Cumplimiento de Orden sobre Disolución de Jurado* destacó que el Jurado presenció el evento que aconteció con LMLA, siendo esto un evento que no es susceptible de subsanarse mediante instrucciones o medidas correctivas.[6] Además, sostuvo que el Jurado presenció lo ocurrido con LMLA, y que la impresión que generó este incidente es lo último que recuerdan del caso, creando así un riesgo de que le adjudique mayor peso a una influencia extrínseca. Ante ello, indicó que el Jurado no podría desvincular este suceso con los hechos imputados, lo cual formaría parte de su proceso mental cuando les corresponda deliberar sobre la prueba de cargo. Finalmente, adujo que, de no ordenarse la disolución del Jurado, se celebraría un juicio que incumple con las garantías constitucionales de ser justo e imparcial.

De otra parte, el Ministerio Público en su *Moción en Cumplimiento de Orden*, sostuvo que han transcurrido tres (3) años desde que comenzó el desfile de prueba el 29 de marzo de 2022, por lo que es probable que los miembros del Jurado no recuerden lo que ocurrió en la vista, ni lo que comenzó a declarar la víctima.[7] Igualmente, adujo que el ordenamiento vigente permite que cualquier error sea subsanado mediante unas instrucciones correctas y oportunas. Por último, señaló que, a los fines de evitarles mayores dilaciones y perjuicios a los participantes del proceso penal, lo procedente en derecho es

---

[6] Entrada #11 de SUMAC TPI.
[7] Entrada #12 de SUMAC TPI.

continuar con el juicio e implementar las medidas cautelares que sean necesarias como la impartición de instrucciones al Jurado.

Analizadas las dos posiciones, el 1 de julio de 2025, el TPI emitió una *Resolución* mediante la cual ordenó la disolución del Jurado.[8] Razonó su dictamen de la siguiente manera:

> Entendemos que una irregularidad como la ocurrida afecta los derechos del acusado a un juicio justo e imparcial. No podemos perder de perspectiva que en el caso la menor declaró en el directo sobre los elementos del delito y la conducta alegada contra el acusado, esto a nivel de juicio por circuito cerrado. Fue en el directo que la menor sufrió el percance, razón por lo cual no pudo ser contrainterrogada en cuanto a lo expresado a nivel de juicio. El Ministerio Público alega que el Tribunal manejó adecuadamente al retirar las imágenes y decretar el receso en Sala.

> No obstante lo anterior, tomamos conocimiento de que escuchó en Sala, estando el Jurado presente, el despliegue de alguaciles y sus expresiones para atender la emergencia.

> Conforme Pueblo v. Guzmán Camacho, 116 DPR 34 (1984), cabe la pregunta de si aún en el campo de lo especulativo, que el acontecimiento no impactó potencialmente a los jurados, y podrían inferir la convicción del acusado. ¿Qué instrucción subsanaría el que el Jurado escuchara un directo a nivel de juicio, donde no se contrainterrogó a nivel de juicio, continuando con la grabación de la vista preliminar?

> Entendemos que la pureza de los procedimientos se salvaguardaría con la disolución del jurado y con la utilización de la grabación del testimonio de la menor vertido en vista preliminar en un nuevo juicio. Ante lo ocurrido, no podría prosperar planteamiento alguno sobre doble exposición.

Ante este desenlace, el 16 de julio de 2025, el Ministerio Público solicitó *Reconsideración* del dictamen.[9] No obstante, el 19 de agosto de 2025, el foro primario denegó la solicitud de reconsideración del aquí peticionario.[10]

Inconforme con el proceder del foro primario, el 18 de septiembre de 2025, el Pueblo acudió ante este Tribunal mediante recurso de *Certiorari* y señala el siguiente error:

---

[8] Entrada #2 de SUMAC TPI.
[9] Entrada #13 de SUMAC TPI.
[10] Entrada #14 de SUMAC TPI.

> Erró el Honorable Tribunal de Primera Instancia al ordenar el remedio extremo que constituye la disolución del Jurado, en lugar de impartirle instrucciones al Jurado para subsanar el hecho de que la testigo víctima sufrió un percance de salud durante el comienzo de su testimonio, lo que la volvió testigo no disponible, y que no tuvo un efecto perjudicial en la capacidad del Jurado para emitir un veredicto justo e imparcial.

Por su parte, el 30 de septiembre de 2025, el señor Lugo López presentó su *Oposición al Certiorari.* Allí, nos indica que el Pueblo no nos colocó en posición para revisar la situación acontecida allá para el 29 de marzo de 2022 en el Tribunal de Primera Instancia, Sala Superior de Mayagüez. A su vez, el recurrido asegura que, lo último que escuchó y presenció el Jurado fue el evento traumático de la testigo y la situación de emergencia que tuvo que ser atendida por los funcionarios del Tribunal. Además, este nos explica que el Jurado pudo escuchar las expresiones escuchadas en sala, por la Juez y el personal de alguaciles mientras se socorría a la testigo. Siendo ello así, una instrucción es insuficiente para subsanar el hecho de que el Jurado había escuchado un testimonio a nivel de juicio (examen directo) y que la Defensa no tendría la oportunidad de contrainterrogar sobre lo ya declarado en corte. Añade, que, por asuntos de juicio justo e imparcial, se debe disolver el Jurado para que el resultado este basado en la prueba presentada y no influencias externas o sentimentales.

## II.

## A.

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. Pueblo v. Rivera Montalvo, 205 DPR 352, 372 (2020). A su vez, se ha indicado que "el *certiorari* es un mecanismo extraordinario

que procede, discrecionalmente, cuando no hay otro mecanismo disponible." Pueblo v. Guadalupe Rivera, 206 DPR 616, 632 (2021). A diferencia del recurso de apelación, el tribunal superior puede expedir el auto de *certiorari* de manera discrecional. Pueblo v. Rivera Montalvo, *supra*; Pueblo v. Díaz de León, 176 DPR 913, 917-918 (2009).

El Tribunal Supremo ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009); Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, *supra*. Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. Pueblo v. Rivera Santiago, *supra*, pág. 581.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas.*, Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025), señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*. La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:
>
> a.     Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> b.     Si la situación de hechos planteada es la más indicada para el análisis del problema.

c.      Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

d.      Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

e.      Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

f.      Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

g.      Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

**B.**

La Constitución de los Estados Unidos codifica el derecho a juicio por jurado en casos criminales en su Sexta Enmienda:

> *In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed* […]. Emda. VI, Const. EEUU, LPRA, Tomo 1.

Así pues, la Sexta Enmienda de la Constitución de los Estados Unidos garantiza que en todo proceso criminal el acusado disfrutará del derecho a un juicio rápido y público por un jurado imparcial del estado y distrito donde se haya cometido el delito. Íd.; Pueblo v. Santana Vélez, 177 DPR 61, 65 (2009). Igualmente, la Constitución de Puerto Rico dispone expresamente que:

> En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia.

> En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve. Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1.

Siendo ello así, el acusado tiene el derecho de confrontarse con la prueba en su contra, así como que se le pruebe la acusación

mediante prueba admisible conforme las normas de relevancia, confiabilidad y certeza que la experiencia secular ha consagrado en el proceso adversativo y no por influencias extrañas al proceso. Pueblo v. Robles González, 125 DPR 750, 757 (1990). La parte del veredicto por mayoría de los componentes del jurado, se interpreta como veredicto unánime para encontrar culpable un acusado de delito grave, a raíz de la decisión del propio Tribunal Supremo de Puerto Rico que recientemente modificó dicha norma en *Pueblo v. Torres Rivera II*, 204 DPR 814 (2020), y estableció lo siguiente:

> La normativa imperante en nuestro ordenamiento, y a nivel de Estados Unidos en torno al contenido concreto del derecho a un juicio por jurado, cambió significativamente con la determinación del Tribunal Supremo [federal] en el caso *Ramos v. Louisiana*, [140 S.Ct. 1390]. En ese caso, el Tribunal Supremo de Estados Unidos concluyó que el derecho fundamental a un juicio por jurado garantizado por la Sexta Enmienda, según incorporado a los estados por vía de la Decimocuarta Enmienda, no admite veredictos que no sean unánimes en los casos penales que se ventilan en las cortes estatales.[11]

El Tribunal Supremo Federal en *Ramos v. Louisiana*, 140 S.Ct. 1390, estableció como precedente que el derecho a un juicio por jurado, consagrado en la Sexta Enmienda de la Constitución Federal, requiere "un veredicto unánime en un procedimiento penal en el cual se imputa la comisión de un delito grave".[12] Ante este escenario, se dejó claro que un veredicto unánime, constituye una protección procesal fundamental, para todo acusado de delito grave. En consecuencia, la unanimidad del Jurado representa una cualidad inmanente al derecho fundamental a un juicio por jurado de la Sexta Enmienda.[13]

---

[11] *Pueblo v. Torres Rivera II*, supra, págs. 299-300.
[12] Íd., pág. 300.
[13] Íd.

## C.

La Regla 144 de Procedimiento Criminal, 34 LPRA Ap. II, permite y citamos:

> El tribunal podrá ordenar la disolución del jurado antes del veredicto en los siguientes casos:
>
> a. …
>
> b. …
>
> c. …
>
> d. Si se hubiere cometido algún error o se hubiere incurrido en alguna irregularidad durante el proceso que, a juicio del tribunal, le impidiere al jurado rendir un veredicto justo e imparcial.

No obstante, en todos los casos en que el jurado fuere disuelto según lo previsto en esta regla, la causa podrá ser juzgada nuevamente. Íd.; Pueblo v. Guzmán Camacho, 116 DPR 34, 41 (1984).

Ciertamente, la condición humana es inseparable del proceso de administrar justicia. Ahora bien, nuestro más alto foro local repetidamente ha expresado que tampoco debemos presumir que el Jurado este compuesto por personas de sensibilidad extrema. Pueblo v. Guzmán Camacho, supra, págs. 37-38; Pueblo v. Dones Arroyo, 106 DPR 303, 311 (1977); Pueblo v. Andrades González, 83 DPR 849, 860 (1961); Pueblo v. Rivera Romero, 83 DPR 471, 483 (1961).

Como parte del derecho de un acusado a un juicio justo e imparcial, la defensa podrá solicitar la disolución del jurado cuando durante el juicio ocurre una irregularidad de tal magnitud que: (1) no es subsanable mediante instrucciones al jurado; y (2) la continuación del juicio no es posible porque un veredicto de culpabilidad se obtendría en violación al debido proceso de ley y no sería resultado de un proceso imparcial. E. L. Chiesa

Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, 1era ed. Colombia, Ed. FORUM, 1991, Vol. II, pág. 322.

Ahora bien, la disolución de un juicio debe ser producto de una sana y juiciosa discreción; la facultad debe ejercitarse con la mayor cautela, por consideraciones obvias de peso, y ante una necesidad manifiesta de así hacerlo. Pueblo v. Guzman Camacho, *supra,* pág. 43 (citando a United States v. Tateo, 377 U.S. 463; Gori v. United States, 367 U.S. 364, 367; Wade v. Hunter, 336 U.S. 684). De modo que, no todo error o irregularidad en el proceso contamina la imparcialidad de un veredicto, sino que este debe ser grave, perjudicial, sustancial e insubsanable. Pueblo v. Ramos Miranda, 140 DPR 547, 556 (1996).

### III.

El Pueblo señala como único error la determinación del TPI de disolver el Jurado. El Ministerio Público como peticionario por conducto del Procurador General, entiende que el foro primario debió impartirle instrucciones al Jurado para subsanar el hecho de que la víctima sufrió un percance de salud durante el comienzo de su testimonio, lo que la volvió una testigo no disponible. Estamos de acuerdo en que no procede la disolución del jurado, lo correcto es impartirle instrucciones al Jurado para subsanar el hecho de que la víctima sufrió un percance de salud durante el comienzo de su testimonio, lo que la volvió testigo no disponible.

Por lo general los tribunales revisores no intervienen con el manejo de los casos por el TPI, a no ser que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio

sustancial. <u>Pueblo v. Rivera Santiago</u>, *supra*, pág. 581; <u>Zorniak Air Services v. Cessna Aircraft Co</u>*.,* 132 DPR 170, 181 (1992).

En la Resolución que aquí evaluamos, el TPI se equivocó en la interpretación o aplicación del derecho sustantivo del acusado a un juicio por jurado, y nuestra intervención en esa etapa evitará un perjuicio sustancial a dicho error cometido por el TPI. No hay prejuicio en este caso que no se subsane con una instrucción al Jurado como hemos expresado. El que el jurado haya escuchado cierto incidente con la víctima como testigo no requiere su disolución pues no se trata de un grave, perjudicial, sustancial e insubsanable error.

Luego de analizar los planteamientos esbozados por el peticionario, a la luz del derecho vigente y los criterios establecidos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, existen circunstancias que ameritan nuestra intervención con la *Resolución* recurrida.

No hay tal gravedad con los hechos que aquí evaluamos que ocurrieron durante el juicio que requiera disolver un jurado. Ordenar la disolución del jurado ante estos hechos es una interpretación equivocada de parte del TPI, del derecho aplicable. Conforme lo antes evaluado, procede expedir el Auto solicitado y revocar la Resolución que ordena la disolución del jurado. Una instrucción al jurado antes de este ser instruido a salir para deliberar, que cubra ese aspecto de la no disponibilidad de la víctima como testigo, subsana cualquier preocupación y en nada impide que ese jurado emita un veredicto justo e imparcial.

**IV.**

Por las razones antes expresadas, expedimos el recurso de *Certiorari*, dejamos sin efecto la Resolución aquí cuestionada y

devolvemos el asunto al foro primario para que continúe los procedimientos según aquí hemos expresado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones